256 So.2d 630

**STATE of Louisiana**

**v.**

**Bruce KILBOURNE.**

**No. 51198.**

·Jan. 17, 1972.

Debra A. Millenson, Stanley A. Halpin, Jr., George M. Strickler, Jr., New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Woodrow

W. Erwin, Dist. Atty., John N. Gallaspy, Asst. Dist. Atty., for plaintiff-appellee.

McCALEB, Chief Justice.

.Bruce Kilbourne was indicted on a charge of aggravated battery in violation of R.S. 14:34. He was convicted by a five-man jury and sentenced to three years at hard labor in the State Penitentiary. A number of bills of exceptions were reserved during the trial and perfected. However, all but one have been abandoned on this appeal.

This bill of exceptions was taken when the trial court overruled appellant's motion to quash the indictment, based solely on the allegation that there had been an improper exclusion of black people from the general venire, "which renders said venire improper and violates the guarantees of the Sixth Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution."

Before commencing our discussion of appellant's claim, we think it appropriate to set forth the manner in which the general venire is kept in Washington Parish. A new general venire list is not prepared each term or session of court. Rather, it appears that at some unspecified time (many years ago) one such list of three hundred names was prepared. Each name was written on a slip of paper and placed in the "General Venire Box" from which were drawn names to make up the general

and petit jury venires. Thereafter, from time to time, when names were drawn for the grand and petit juries a sufficient number of names were added to the general venire list and to the box to replace those drawn, in order to maintain the required number (three hundred) on the general venire.[1] Thus, the general venire box from which the grand jury which indicted this appellant (and the petit jury which tried him) was ultimately selected, contained the original names, with the subsequent additions (other than those already drawn).

Nothing on the general venire list, however, shows which names have been called, whether any of the persons have died or moved away, or whether for some other reason they are no longer available for jury duty. Therefore, the number of names on the list far exceeds the approximately three hundred names in the venire box. The list does not indicate the race of the persons appearing thereon, conformably with Art. 408 C.Cr.P.

In the brief filed in this Court defense counsel explains that, during the hearing on the motion to quash, she introduced statistical evidence to show that the non-white male population of Washington Parish, over twenty years of age, comprised approximately 28.5% of the total male population in that age group. She further declares that she attempted to demonstrate that there is a racial imbalance of the general jury venire by having the Clerk of Court and the various members of the Jury Commission identify by race each person on the venire; but that, although the Clerk was permitted to testify (so far as he knew) as to the race of some of the persons listed on the venire, the court stopped her questioning along this line. The judge also ruled that he would not permit the jury commissioners to be questioned in a similar manner. Counsel insists that this was the only way in which she could show the disproportionate number of whites on the venire, in order to make a prima facie showing of discrimination in the selection thereof, and a presumptive violation of her client's constitutional rights.

In this connection, counsel premises her argument solely on the proposition that "Denial to the defendant of the right to be indicted by a grand jury and tried by a petit jury selected from a venire composed of a true cross-section of the community, violated substantial federal rights under the Fourteenth Amendment to the United States Constitution."

We find that none of the cases cited by counsel support the proposition, *as stated*. The underlying principle of the cases, correctly stated, is, as set forth in Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.

---

1. This supplementation of the original list, rather than preparing a new list, is permitted under C.Cr.P. Article 408, formerly Article 179 of the 1928 C.Cr.P.

Ed.2d 599 (1967), that "a conviction can-not stand if it is based on an indictment *of a grand jury* or verdict *of a petit jury* from which Negroes were excluded by reason of their race."[2] (Emphasis added.)

It is true that in a number of the cases the court discusses in some detail the manner in which the general venire was selected.[3] But in those cases the reason for this inquiry concerning general venire selection was to show that a demonstrated, actual lack of Negroes from the grand or petit jury was brought about, not by chance, but by procedures designed, either intentionally or because of the nature of selection procedures, to effect exclusion of Negroes from jury service.

Thus, in Carter v. Jury Commission of Green County, 90 S.Ct. 518, 396 U.S. 320, 24 L.Ed.2d 549 (1970), the charge was made that the jury commissioners had "effected a discriminatory exclusion of Negroes from grand and petit juries in Greene County * * *." In Whitus v. Georgia, supra, the allegation was made that "Negroes had been systematically excluded from both the grand and petit juries." And the court found that although the population of the county involved was

45% Negro, *no* Negro had *ever served on juries* in the county.

In Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1224 (1953), *no Negroes served on the jury* which tried defendant and the question was whether this had occurred by chance or by design. The court pointed out that although 25% of the population was Negro, the names for the general venire were taken from only the tax rolls which contained only 14% Negroes. Further, the names of white persons placed in the venire box, from which the petit jury was selected, were written on white paper while those of Negroes appeared on yellow slips. The use of different colored slips in selecting the petit jury venire, plus the fact *that not one Negro appeared on the jury panel of sixty names*, although there were some in the general venire box (on yellow slips), led the court to find that illegal discrimination was practiced *in drawing the names from the box*, and that the *total absence of Negroes from the jury* which tried the accused occurred by intent, not chance. In a concurring opinion, Justice Frankfurter pointed out that a member of the Board of Jury Commissioners testified that the use of

---

2. See also Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1953), which enunciated the rule and broadened it so as to make it applicable to other recognizable classes of persons (ethnic, religious, et cetera) of a particular community.

3. In some the selection of the general venire is under consideration. In others a special venire might be involved.

white and yellow slips was designed for purposes of racial discrimination.

Again, in Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935), the prima facie showing of alleged discrimination was the uncontradicted testimony that, despite a representative number of eligible Negroes in the county (some of whom had been called for federal jury service), "* * * 'in a long number of years no negro had been called for jury service in that county.' It appeared that no negro had served on any grand or petit jury in that county within the memory of witnesses who had lived there all of their lives."

Likewise, in Patton v. Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947), the prima facie case consisted of "evidence which showed without contradiction that no Negro had *served on the grand or petit criminal juries* for thirty years or more. There was evidence that a single Negro had once been summoned during that period but for some undisclosed reason he had not served, nor had he even appeared," (emphasis added) although Negroes comprised somewhat over one-third of the adult population.

It would be superfluous, we think, to detail further the cases cited by appellant's counsel in her brief to this Court. Suffice it to say, in all of them there was demonstrated an exclusion of Negroes from service on the grand or petit juries involved.[4] In none of them was an indictment quashed, or a conviction overturned on the mere showing that a venire was improperly constituted without a showing of exclusion of Negroes from jury service.

■ There was no showing whatsoever in the instant case, indeed it is not even alleged, that the method of selecting the general venire resulted in a systematic exclusion of Negroes from the grand jury which indicted appellant or from the petit jury which tried him. Nor is it alleged that either the grand or petit jury venire was unconstitutionally constituted. On the contrary, at least insofar as the petit jury is concerned, the record shows otherwise. The district court in its per curiam points out that there was one Negro man on the five-man jury which tried appellant and that "While the court did not make a specific count of the number of black people that were on the venire list, the State and defense excused several black people from serving on the jury * * * and there were other black people on the jury venire present in the court at the time of the

---

4. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880); Pierre v. Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757 (1939); Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940); Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1953); Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1957); Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967); and State v. Goree, 242 La. 886, 139 So.2d 531 (1962).

selection of the jury for this particular matter."

Appellant introduced no evidence as to the racial make-up of the grand jury which indicted appellant or the grand jury venire from which it was drawn. It is not alleged that these lists were unavailable to appellant. Consequently, we can only conclude that, like the petit jury, the grand jury was not devoid of a reasonable number of Negroes.

Since appellant has failed to make a prima facie showing that Negroes were excluded (either intentionally or otherwise) from serving as either grand or petit jurors, we are unable to conclude that he has been deprived of any right guaranteed by the United States Constitution as he claimed. Consequently, we find no error in the trial court's overruling the motion to quash the indictment.

■ With regard to the trial court's refusal to permit defense counsel to question the Clerk and Commissioners concerning the racial make-up of the general venire, we are in agreement with the court's ruling. Defense counsel was obviously intent on conducting a "fishing expedition" in pressing her efforts to show that the names placed on the general venire list did not contain as many Negro names percentage wise, as it should have, in the absence of allegation and some proof of exclusion

of Negroes from grand or petit juries. In view of the lengthy venire list, such questioning would only consume an interminable, unjustified period of time.

Our conclusion in this matter is consonant with the admonition of C.Cr.P. 419 which states that:

"A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would work irreparable injury to the defendant."

Since appellant has failed to produce any evidence to show that Negroes were, in fact, excluded from jury service, he has failed to establish irreparable injury.

For the reasons assigned the conviction and sentence are affirmed.

DIXON, J., concurs.

TATE, J., concurs in the result, being inclined to the view that the trial court did not abuse its discretion in curtailing the prolonged method of establishing a possibility of discrimination.

BARHAM, Justice (dissenting).

The bill of exceptions we consider was taken to the trial court's overruling of defendant's *motion to quash the indictment*

based upon an allegation of discriminatory practices in selection of the *general venire.* This is a proper allegation upon which to found a motion to quash under Code of Criminal Procedure Articles 532 and 533. Article 532 pertinently provides: "A motion to quash may be based on one or more of the following grounds: * * * (9) The *general venire* or the petit jury venire was improperly drawn, selected, or constituted." Article 533 reads in part: "A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds: (1) *The manner of selection of the general venire,* the grand jury venire, or the grand jury was illegal. * * *" (Emphasis supplied.) See also Article 535 B(2) and (3).

The majority appears to believe that a statement taken out of context from Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), supports a holding that only the grand jury and the petit jury are subject to attack for discriminatory practices in juror exclusion, and the majority dwells at length upon the defendant's failure to attack the grand jury and the petit jury. Defendant had a right to level his complaint directly against the *general venire,* which he was convinced was tainted because of discriminatory practices. A direct attack upon the general venire is, of course, also an attack upon any grand or petit jury formed from the general venire. If the general venire fails constitutionally, it naturally follows that any special venire drawn from it or any jury selected under it would also fail constitutionally.

The majority opinion's lengthy discussion of the racial makeup of the grand jury and the petit jury does not meet the issue raised in the motion to quash, which has been argued and briefed so ably in this court. Defendant's principal complaint, which I believe has merit, is that the trial court refused to allow him to establish or attempt to establish by the only method available that the general venire was in fact selected in a manner that discriminated against black people. Defendant had established the character of the population —i. e., the percentage of blacks eligible for jury service. Legal error occurred when the trial court curtailed examination of witnesses to determine the actual racial character of the general venire. Defendant had the *obligation* to establish a prima facie case of discrimination by showing a disparity between the percentage of his race in the general population and the percentage of his race included in the venire. Necessarily the defendant had the *right* to use the best legal evidence available to discharge this burden.

It is well settled that once a defendant has made a prima facie showing of discrimination by establishing such a disparity, the burden of proof shifts to the State to show why the disparity exists, and that

if the State fails to prove that the disparity did not result from systematic exclusionary practices, the defendant is successful in his attack upon the venire under the prima facie showing.

Beginning with Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935), the Supreme Court of the United States has repeatedly asserted that the defendant's showing of disparity " * * * made out a *prima facie* case of the denial of the equal protection which the Constitution guarantees". In Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953), the court said: " * * * We have held before, and the Georgia Supreme Court, itself, recently followed these decisions, that when a prima facie case of discrimination is presented, the burden falls, forthwith, upon the state to overcome it. * * *" The court there cited Norris v. Alabama, supra; Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942); Patton v. Mississippi, 332 U.S. 463, 68 S. Ct. 184, 92 L.Ed. 76 (1947).

The majority opinion here has cited numerous cases which actually support the defendant's position, and yet it has held them inapposite on the basis of a belief that the holdings of those cases apply only to the composition of grand and petit juries and not to the composition of the general venire. I cannot accept this reasoning, for certainly when a general venire is

unconstitutionally formed, everything which flows from that venire is tainted as well.

In the case of Whitus v. Georgia, supra, the court said that the burden of showing purposeful discrimination shifts when the defendant has made out a prima facie case. Actually in Whitus, which the majority claims involves attack only upon the grand and petit juries, the prima facie case of discrimination was established from the jury commission's use of taxpayer lists separate by race which created a disparity in the general venire. The court then held the State had failed to carry the burden of showing that the disparity had not resulted from purposeful discrimination, for general testimony that no one was included or rejected because of race or color was insufficient to overcome the prima facie case. Norris v. Alabama, supra, and Williams v. Georgia, 349 U.S. 375, 75 S.Ct. 814, 99 L. Ed. 1161 (1955), were cited.

The majority claims that Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970), supports its position that attack cannot be made upon the general venire. The inquiry in Carter v. Jury Commission of Greene County was directed at the composition of the "jury roll" and "jury lists" and the "potential jurors". The court was there concerned with the commission's method of selecting what we would call the general venire, and the attack was upon a

practice that excluded Negroes from jury service because of their race. This was not an appeal from a criminal conviction; it was a class action where blacks complained that systematic exclusionary practices by jury commissioners made it impossible for them to be enrolled on the general venire from which they could be called for jury service.

While none of the cases cited by the majority supports the proposition for which the majority argues, Carter v. Greene County is especially inapposite as authority, for this is the first case to reach the Supreme Court in which *a direct action was brought by a class* attacking the method employed by jury commissioners in the composition of their jury lists.

In Muniz v. Beto, 434 F.2d 697 (5th Cir. 1970), relying on Norris and other cases, the court said that the rule has developed that " * * * a defendant can establish a prima facie case of discrimination by showing a disparity between (1) the percentage which his race constitutes of the group of persons from whom a *jury list* is drawn and (2) the percentage which his race constitutes of the *jury list* which is thereafter compiled". (Emphasis supplied.)

A case not cited by the majority but certainly in point is Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967). There in a per curiam opinion the Supreme

Court held the case to be indistinguishable from Whitus v. Georgia. It found that Negroes constituted 24.4 per cent of the taxpayers from whom the jury list was drawn, but " * * * only 4.7% of the names on the grand jury list and 9.8% of the names on the traverse jury list * * *".

The majority of our court has decided this case under its belief that in none of these Supreme Court cases " * * * was an indictment quashed, or a conviction overturned on the mere showing that a venire was improperly constituted without a showing of exclusion of Negroes from jury service". The majority admits, however, that " * * * in a number of the cases the court discusses in some detail the manner in which the general venire was selected", and in Footnote 3 states categorically: "In some the selection of the general venire is under consideration. In others a special venire *might* be involved." (Emphasis mine.)

The reasoning of the majority is unsound, and the premise upon which it is based is untenable, as is clearly shown by the opinions of the United States Supreme Court and our own positive, specific codal provisions. This is another case in which I believe the majority opinion merely causes delay in criminal justice, for on writ application the United States Supreme Court will undoubtedly grant the hearing to which the defendant is entitled by simple

per curiam treatment with citation of pertinent case law, as has occurred recently in a number of cases in which we have failed to follow clear and definite United States Supreme Court decisions.

We do not have before us the question of whether this general venire was in fact illegally formed. We review an erroneous ruling by the trial court which denied the defendant the right to attempt to make the required prima facie showing that this general venire was unconstitutionally selected. For these reasons we should reverse and remand, and I respectfully dissent.