371 So.2d 762 (1979)
STATE of Louisiana
v.
Herman GEORGE.
No. 63244.
Supreme Court of Louisiana.
May 21, 1979.
Rehearing Denied June 25, 1979.[*]
*763 John W. Johnson, Eunice, Murphy W. Bell, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., Randy D. Elkins, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Herman "Twin" George was indicted by the grand jury for the first degree murder of Henry Scott in violation of La.R.S. 14:30. After trial by jury, defendant was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt, and the jury unanimously recommended that defendant be sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. The trial judge sentenced defendant in accordance with the recommendation of the jury. On appeal, defendant relies upon fifteen assignments of error for reversal of his conviction and sentence.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
Defendant contends the trial judge erred in denying his motion to quash the indictment and petit jury venire. Essentially, he argues that both the grand jury and the petit jury venire were improperly constituted in that they were not representative of a fair cross-section of the community.
A hearing was held on defendant's motion to quash the indictment. It was stipulated that the evidence adduced at this hearing would also be applicable to the motion to quash the petit jury venire. Evidence indicates that Webster Parish has a population of about forty thousand people, consisting of twenty-six thousand whites and fourteen thousand blacks. Also, there are about twenty thousand registered voters, fifteen thousand of whom are white and five thousand of whom are black. No eligible person is denied the right to register to vote; the only requirements are that a person present some form of identification and evidence of his address and date of birth. Under the system in effect in that parish since 1976, jury commissioners place the twenty thousand names obtained from the voter registration list in a jury wheel. The list is the exclusive source of names for the general venire. Thereafter, the jury commissioners withdraw two thousand names at random from the jury wheel. Questionnaires are then sent out to these persons to determine who are qualified to serve as jurors. After the questionnaires are returned, the names of qualified persons are placed in a jury box from which the *764 general venire is drawn. The grand jury which indicted defendant in the instant case was impaneled on September 13, 1977, and returned an indictment against defendant on January 9, 1978. Hence, the grand jury which indicted defendant and the petit jury venire from which the petit jury before whom defendant was tried were derived from a general venire selected as aforesaid. There was no evidence of any policy to systematically exclude any identifiable group from serving as jurors. At the conclusion of the hearing, the trial judge denied defendant's motions to quash the indictment and the petit jury venire.
While a defendant has a constitutional right to be indicted by a grand jury and tried by a petit jury chosen from a fair cross-section of the community, he is not entitled to juries reflecting with mathematical precision the composition of the community. State v. Lawrence, 351 So.2d 493 (La.1977); State v. Anderson, 315 So.2d 266 (La.1975); State v. Millsap, 258 La. 883, 248 So.2d 324 (1971). A defendant who contends that he is deprived of juries which represent a fair cross-section of the community has the burden of establishing a prima facie case of discrimination. State v. Jones, 263 La. 1012, 270 So.2d 489 (1972); State v. Kilbourne, 260 La. 569, 256 So.2d 630 (1972). In State v. Daigle, 344 So.2d 1380 (La.1977), defendant contended that the exclusive use of voter registration rolls to draw up the general venire violated his right to a fair trial by a representative cross-section of the community. While expressing concern over the propriety of using voter registration lists as the single source from which the jury venires were compiled, we held, however, that "we cannot say that the use of voter lists without any showing in the record of any discrimination against a class of people establishes that the jury pool did not represent a fair cross-section of the community." Likewise, in State v. Unger, 362 So.2d 1095 (La.1978) and State v. Lawrence, supra, we rejected similar contentions on the ground that defendant failed to demonstrate a systematic exclusion of any identifiable segment of the community.
In the instant case, defendant's motions to quash were grounded on the sole claim that the grand jury and petit jury venire were racially imbalanced due to a systematic exclusion of blacks. On appeal, defendant abandons this contention and argues instead that the grand jury and petit jury venire were improperly constituted because of discrimination in the selection process against other classes of persons, I. e., eighteen to twenty-one year olds and non-registered voters. However, the record is devoid of any evidence tending to establish a systematic exclusion of any identifiable segment of the community. The only class excluded from consideration by the jury commission are those persons qualified as prospective jurors who are not registered to vote, a class without any distinguishable, common characteristics. Hence, we do not find that the trial judge erred in denying defendant's motions to quash the indictment and petit jury venire.
Assignments of Error Nos. 1 and 2 are without merit.

ASSIGNMENTS OF ERROR NOS. 3-12, INCLUSIVE
Defendant contends the trial judge erroneously allowed the state eleven challenges for cause based upon the prospective jurors' sentiments toward the death penalty, resulting in a denial of a fair cross-section of the community and in the allowance to the state of more peremptory challenges than it is entitled to by law. The state exercised eight of the twelve peremptory challenges permitted it by law in the trial of this offense punishable by death. La.Code Crim.P. art. 799.
At the outset, we note that defendant made no objection to the challenge of Mrs. Gloria J. Morse for cause (Assignment of Error No. 3). La.Code Crim.P. art. 841 provides, and this court has consistently held, that in the absence of a contemporaneous objection, an alleged irregularity or error cannot be availed of after verdict. State v. Williams, 343 So.2d 1026 (La.1977).
*765 We also find that the state's challenges for cause of the other ten prospective jurors were properly allowed by the trial judge. La.Code Crim.P. art. 798 provides in pertinent part:
It is good cause for challenge on the part of the state, but not on the part of the defendant that:
. . . . .
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt; . . . .
This article was amended to conform with the decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), wherein the United States Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." (footnote omitted) On the other hand, the Court found no constitutional bar to excluding jurors who stated in advance of trial that they could not even consider returning a verdict of death or that their attitude about the death penalty would prevent them from making an impartial decision as to defendant's guilt.
After carefully examining the record on voir dire examination, we are satisfied that each of the ten jurors, after questioning by both the state and defendant, were properly excused in strict compliance with the standards set out in Witherspoon and La.Code Crim.P. art. 798(2)(a). The responses made by these prospective jurors clearly indicated that, because of their conscientious scruples against the infliction of capital punishment, they would automatically vote against the imposition of capital punishment without regard to any evidence that might have been developed in the trial of the case before them, or at the sentencing hearing in the event of conviction.
Moreover, the jury did not recommend and the trial court did not impose the death penalty. Defendant does not have a valid complaint of a Witherspoon violation. We have uniformly held that a defendant insulated from the death penalty has no valid Witherspoon complaint. State v. Drew, 360 So.2d 500 (La.1978).
Also, having concluded that the state's challenges for cause of the ten prospective jurors were properly allowed by the trial judge under La.Code Crim.P. art. 798(2)(a), there is no merit to defendant's contention that the state was permitted more peremptory challenges than it was entitled to by law in contravention of the second paragraph of La.Code Crim.P. art. 800.[1]
In addition, we reject defendant's contention that the foregoing authorities are inapplicable to the instant case since they were based upon the trial of offenses involving a mandatory death penalty and not the bifurcated procedure employed in this state since 1976. Our examination of the Witherspoon decision discloses that the statute involved therein provided for a bifurcated proceeding similar to ours, allowing the jury the discretion to impose a sentence of death or imprisonment. Witherspoon v. Illinois, supra, 391 U.S. 510, 88 S.Ct. at 1775. See also State v. Drew, supra, in which we applied the foregoing authorities in connection with a trial of an offense punishable by death pursuant to the bifurcated procedure.
In sum, Assignments of Error Nos. 3 through 12, inclusive, are without merit.

*766 ASSIGNMENT OF ERROR NO. 13
Defendant contends the trial judge erred in allowing in evidence certain inculpatory statements and/or confessions made by defendant without having been first advised of his Miranda rights.
Prior to trial, defendant filed a motion to suppress certain inculpatory statements and/or confessions. The motion was referred to the trial on the merits. At trial, Deputy Jimmy Morgan testified that, while he and Officer Glennell Merritt were patrolling the streets of Cullen on December 28, 1977, they received a call over the radio from an unknown party at about 9:40 a. m. telling them to go to a place known as Babe Moore's. The officers proceeded to the scene immediately and parked their car across the street from the front of Babe Moore's. Deputy Morgan got out of the car, at which time defendant walked toward him with a gun in his hand and stated: "I got Henry." At this point, the jury was removed from the courtroom upon the state's request so that it could lay a foundation for the introduction in evidence of other statements made by defendant at a later time. Deputy Morgan then stated that defendant handed the gun to Officer Merritt who unloaded the gun and handed it to him. Deputy Morgan testified that he then asked defendant whom he had shot, and, after being told he had shot Henry, asked him where Henry was located. Defendant replied that Henry had been taken to the hospital. Defendant was then placed into the patrol car. Officer Morgan stated that, while defendant was "placed in custody," he did not "actually tell him he was under arrest." He emphatically stated that he did not interrogate defendant at this point or at any time during the period in which defendant was transported in the patrol car to the jail. Enroute to the jail, defendant talked "a good bit" making inculpatory statements as: "I didn't know how many times I shot him, I reloaded the gun and shot him some more." Deputy Morgan reiterated that none of the statements were made in response to questions asked by either Officer Merritt or himself and that in fact no questions at all were asked defendant enroute to jail. He stated that he did not advise defendant of his rights as he did not intend to ask him any questions. The testimony of Officer Merritt was substantially the same as that of Deputy Morgan. The trial judge ruled that the oral statements at issue were admissible, reasoning that, although he felt defendant was in custody while in the patrol car, he was not subjected to any interrogation and, therefore, no Miranda warnings were required at that point.
Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Adams, 347 So.2d 195 (La.1977). In Miranda the United States Supreme Court observed: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings even where a defendant is in custody. State v. Thornton, 351 So.2d 480 (La.1977); State v. Sockwell, 337 So.2d 451 (La.1976); State v. Thomas, 310 So.2d 517 (La.1975); State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972); State v. Hall, 257 La. 253, 242 So.2d 239 (1970).
In the instant case, the officers did not formally place defendant under arrest. However, the testimony indicates that, when defendant was placed into the patrol car, he had been taken in custody or otherwise deprived of his freedom of action in a significant way. The record is equally clear that defendant was not subjected to police interrogation while in the patrol car enroute *767 to jail. The inculpatory statements made by defendant were spontaneous and voluntary. Defendant was not threatened, coerced, or in any way, forced to make the inculpatory statements. Under these circumstances, no Miranda warnings were required, and the inculpatory statements and/or confessions were properly admitted in evidence.
Assignment of Error No. 13 is without merit.

ASSIGNMENTS OF ERROR NOS. 14 AND 15
Defendant contends the trial judge erred in denying his motion in arrest of judgment and motion for a new trial on the same grounds as those urged in support of Assignments of Error Nos. 3 through 12, inclusive. For the same reasons assigned by this court to those assignments of error, we likewise conclude that Assignments of Error Nos. 14 and 15 are without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
DENNIS, J., concurs and assigns reasons.
DENNIS, Justice, concurring.
I reluctantly concur, not being in complete agreement with the treatment of Assignment of Error number 13 regarding the admission of defendant's inculpatory statements made en route to jail. It appears that federal jurisprudence does not require that Miranda warnings be given an accused in custody of law enforcement officers unless he is actually interrogated. But see, Y. Kamisar, W. Lafave & J. Israel, Modern Criminal Procedure, (West 1974) at p. 572; Uniform Rules of Criminal Procedure, Rules 212, 241 (1974); A.L.I. Model Code of Pre-Arraignment Procedure, § 120.8 (Proposed Official Draft No. 1, 1972); 1974 Model Code, § 130.1. However, the Louisiana Constitution of 1974 requires that an accused be advised of certain of his constitutional liberties upon arrest or detention regardless of whether he is interrogated. La.Const.1974, art. 1, § 13. The Louisiana rule is preferable, in my opinion, because a person who has been arrested or detained must be aware of his right to counsel and privilege against self incrimination in order to effectively exercise them, regardless of whether he is actually interrogated. Although the defendant did not raise this state constitutional issue in his appeal, which causes me ultimately to concur in the decision herein, the important distinction between the requirements of Miranda and the Louisiana constitution should be noted.
NOTES
[*] Dennis, J., would grant a rehearing.
[1] The second paragraph of La.Code Crim.P. art. 800 provides:

The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law.