384 So.2d 332 (1980)
STATE of Louisiana
v.
Lawrence E. ROBINSON.
No. 65722.
Supreme Court of Louisiana.
May 19, 1980.
Rehearing Denied June 23, 1980.
*333 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul J. Carmouche, Dist. Atty., Ronald R. Inderbitzin, Asst. Dist. Atty., for plaintiff-appellee.
William L. Lowe, Shreveport, for defendant-appellant.
MARCUS, Justice.[*]
Lawrence E. Robinson was indicted by the grand jury for the first degree murder of Mary Carlisle in violation of La.R.S. 14:30. After trial by jury, defendant was *334 found guilty of manslaughter and was sentenced to serve three years at hard labor. On appeal, defendant relies on one assignment of error for reversal of his conviction and sentence.
Defendant was a tenant in the house of Mary Carlisle (victim), who had previously threatened to throw his stereo out of the house because he played it too loudly. On the evening in question, an argument occurred between the victim and defendant over the use of the stereo. As a result, defendant got disgusted and threw the stereo out of the back door, left the house and went to a bar where he drank several beers. He returned home about thirty to forty minutes later to find Mrs. Carlisle and one Albert Hunt sitting on the front porch. Mr. Hunt had parked his truck in the driveway. Defendant pulled his car into the driveway behind Hunt's truck, raced his motor, honked his horn and complained that the truck was blocking the place where he wished to park his car. The truck was not moved. Defendant backed his car out of the driveway, parked it on the street and then entered the house through the rear entrance and proceeded up the back steps to his room on the second floor. Mrs. Carlisle went up the front stairs armed with a gun. Hunt heard the victim and defendant arguing and went to investigate. Defendant armed himself with a gun, shot Hunt on the landing of the stairway and fatally shot Mrs. Carlisle on the second floor. Hunt drove himself to the hospital. The hospital personnel notified the police who arrived at the Carlisle home minutes later. Defendant answered the door when they arrived. He was subsequently arrested and taken to the police station.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in admitting in evidence an oral inculpatory statement made by him to an officer at the scene of the shooting and a recorded confession made by him later that evening at the police station. He argues that the oral statement was made without first having been advised of his Miranda rights and that neither statement was free and voluntary due to his intoxicated and stressful state at the time the statements were made.
At trial, outside the presence of the jury, a predicate was laid by the state for introduction of the confessions in evidence. The first police officers to arrive at the scene of the shooting were Officers Meriam and Burney. (Burney was deceased at the time of the trial.) They were responding to a call of hearing gunshots at that address. As they were starting to investigate, Sgt. Green arrived at the scene. He immediately joined the other officers in an attempt to learn what had happened. Upon reaching the top of the stairs and observing the body of Mrs. Carlisle on the floor, his information that there had been a shooting was confirmed. At about this time (within three minutes after he had arrived), defendant, while talking to no one in particular, stated that "he had shot the woman that was lying at the top of the stairs and also a white male subject that had come up the stairs to the first landing or thereabouts." The statement was completely unsolicited. Sgt. Green stated that he immediately advised defendant of his Miranda rights. While defendant was being advised of his rights, he stopped talking and listened to Green but continued to talk about the incident after he had been administered his rights. By this time, Officers Head and Lupton had also arrived on the scene. They testified that defendant continued to talk about the incident. Accordingly, they read defendant his Miranda rights again from a "rights card" and had him sign the card in their presence after defendant read it. They stated that they wanted to make sure defendant understood what was going on. Although defendant was quiet and attentive while he was being read his rights, he continued to talk thereafter.
Officers Vansant and McGraw transported defendant to the police station. On the way, defendant tried to make a statement but was told by McGraw not to do so as he did not want to be responsible for any statements he might make on the way to the station. Defendant complied and made *335 no statement. At the police station, Detectives Pittman and Foster again read defendant his Miranda rights from a rights card. The detectives testified that defendant signed the card in their presence after defendant read it. Thereafter, a recorded confession was taken from defendant. The typed transcript of the recorded statement was later made and signed by defendant in the presence of Pittman and Foster. Several other officers who were present at the scene testified but had little to add as they had had no contact with defendant. The testimony of all the officers was generally to the effect that, while defendant appeared to have had some drinks earlier in the evening and was nervous and upset, he was clearly not intoxicated and fully understood and realized the consequences of his statements at the time they were made. Each officer specifically stated that defendant was not threatened, intimidated, or promised anything by anyone to make the statements. Defendant offered no evidence to contradict the testimony of the police officers.
At the conclusion of the predicate, the trial judge ruled that defendant's oral inculpatory statement made to Sgt. Green at the scene of the shooting was a voluntary and spontaneous statement and that the recorded confession taken at the police station was likewise admissible since it was freely and voluntarily made after defendant had been advised of his Miranda rights.
Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Miranda, the United States Supreme Court observed: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been deprived of his freedom of action in any significant way." Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings even where a defendant is in custody. State v. George, 371 So.2d 762 (La.1979); State v. Thornton, 351 So.2d 480 (La.1977); State v. Sockwell, 337 So.2d 451 (La.1976); State v. Thomas, 310 So.2d 517 (La.1975); State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972); State v. Hall, 257 La. 253, 242 So.2d 239 (1970). Where the free and voluntary nature of a confession is challenged on the ground that the accused was intoxicated at the time of interrogation, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. State v. Rankin, 357 So.2d 803 (La.1978). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. State v. Hutto, 349 So.2d 318 (La.1977).
In the instant case, defendant was not subjected to custodial interrogation at the time he made the oral inculpatory statement to Sgt. Green. The statement was voluntary and spontaneous. Defendant was not threatened, coerced, or in any way forced to make the statement. Under these circumstances, no Miranda warnings were required. Defendant's recorded statement taken at the police station was likewise freely and voluntarily made after having been advised of his Miranda rights on several occasions. The testimony of the officers clearly negates any claim of intoxication sufficient to vitiate the voluntariness of the confessions. We also reject defendant's contention that his stressful state precluded him from making free and voluntary statements.
*336 Accordingly, we conclude that the trial judge properly admitted the inculpatory statements in evidence. Assignment of Error No. 1 is without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
NOTES
[*] The Honorable RICHARD H. GAUTHIER participated in this decision as an Associate Justice Ad Hoc.