407 So.2d 652 (1981)
STATE of Louisiana
v.
David S. SMITH.
No. 81-KA-0748.
Supreme Court of Louisiana.
November 16, 1981.
*653 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Kenneth Sanders, Asst. Dist. Attys., for plaintiff-appellee.
Robert T. Garrity, Jr., and Joseph Montgomery, Metairie, of Indigent Defender Bd., for defendant-appellant.
LEAR, Justice Ad Hoc.[*]
Defendant David S. Smith was charged by bill of information with the crime of simple burglary, a violation of La.R.S. 14:62. On October 14 and 15, 1980, he was tried before a six person jury which found him guilty of attempted simple burglary. Defendant now appeals on the basis of six assignments of error, five of which are argued.
FACTS
According to testimony by Deputy Art Scudari, on the evening of July 21, 1980, he was called, while on patrol, to St. Martin School for a possible burglary in progress. When he and his partner arrived at the school they began checking the outside of the building. The deputies observed the defendant about a block and a half away, walking from the area of the cafeteria, to the residences across the street. As the defendant reached the sidewalk across from the school his walk became rapid. Deputy Scudari and his partner, Smith, identified themselves and asked the defendant to stop. At that, defendant ran into the back yard of 403 Herring Road. As the yard was enclosed, defendant jumped the fence and hid among the shrubs and bushes. The growth made it too dark to locate the defendant, so the deputies notified police headquarters to send the canine unit.
Deputy Val Penouilh arrived with his German shepherd. When the dog was taken to the crime scene, he picked up a scent which led him to the back yard of 405 Herring Road where the defendant was located. The dog jumped defendant and bit him several times. After the dog was called off, the injured defendant was handcuffed and put into a patrol car. At that time defendant made an inculpatory statement, after which he was hospitalized for his wounds, then incarcerated.
On the ground, outside of the cafeteria door of the school, police found pot pies and small pizzas which were the apparent objects of the attempted burglary.
In Assignment of Error No. 1, defendant argues that the trial court erred in admitting into evidence an oral statement, made by defendant at the time of his arrest, which was not free and voluntary. R.S. 15:451, and La.C.Cr.P. art. 703(C) impose *654 upon the state the heavy burden of showing affirmatively and beyond a reasonable doubt that a confession was made freely and voluntarily, not under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises, before it can be introduced into evidence. Defendant contends that the record supports his argument that the above statutory requirements were not met for three basic reasons.
In the first reason, defendant argues that the state failed to prove, with a signed form or by corroborating the testimony of the arresting officer, that the statement was preceded by the proper Miranda warnings. After the defendant was caught by the police dog he was handcuffed, put into the back of a police car, and read his Miranda rights by Officer Michael Humphrey. In response to this reading Officer Humphrey testified that the defendant said:
"... that he did the burglary. He knew he was guilty and he just wanted to go to the hospital and then bring him straight to Angola."
Since the defendant was handcuffed and in the police car this statement was made while in custody, but not in response to interrogation. In regard to custodial statements this court stated in State v. Robinson, 384 So.2d 332 (La.1980):
"Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Miranda, the United States Supreme Court observed: `By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been deprived of his freedom of action in any significant way.' Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings even where a defendant is in custody. State v. George, 371 So.2d 762 (La.1979); State v. Thornton, 351 So.2d 480 (La.1977); State v. Sockwell, 337 So.2d 451 (La.1976); State v. Thomas, 310 So.2d 517 (La.1975); State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972); State v. Hall, 257 La. 253, 242 So.2d 239 (1970).
Defendant's statement herein was a spontaneous and voluntary statement given after Miranda warnings. The defendant himself testified that the officer read something to him from outside the car. This testimony corroborated the police evidence that the Miranda rights were, in fact, read to defendant. In State v. McPhate, 393 So.2d 718 (La.1981), this court said that spontaneous and voluntary statements not given as a result of a police interrogation or compelling influences are admissible in evidence without Miranda warnings even though defendant is in custody. State v. Robinson, supra. Defendant's spontaneous custodial statement is admissible under the standards set in Robinson and restated in McPhate whether or not the Miranda rights had been read. But, in the instant case, there is testimony of the rights having been read to defendant. This argument is without merit.
Defendant further claims his intoxication after fourteen hours of drinking was so severe as to render inadmissible any statement by him. Defendant argued intoxication at trial and objects here to the state's failure to produce contradictory testimony or medical evidence challenging the truth or accuracy of defendant's allegation of extreme intoxication.
This court discussed the standards for admitting statements made by persons who claim to be intoxicated in State v. Meredith, 400 So.2d 580 (La.1981):
"Where a free and voluntary nature of a confession is challenged on the ground that defendant was mentally incompetent due to intoxication at the time of the confession, such confession will be rendered inadmissible only when the intoxication *655 is of such a degree as to negate defendant's comprehension and to render her unconscious of the consequences of what she is saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact and a trial judge's conclusions on this issue will not be disturbed unless unsupported by the evidence. State v. Rankin, 357 So.2d 803 (La.1978)."
In the instant case, the record reveals that there are two versions regarding defendant's presence in the residential back yard. Defendant claims that since his truck had overheated he was going to get water. Defendant alleges that he was walking to a friend's house in the area when he heard the police yell. He was frightened and ran into a back yard where he passed out under a tree, only to be awakened by a dog biting on him. The trial judge heard this testimony, weighed it against the state's version, which is found in the statement of facts, and decided that the defendant's intoxication was not such as to vitiate the voluntariness of his inculpatory statement. Even from the defendant's version of the events it is still reasonable to conclude that if defendant was lucid enough to care for his car then he was lucid enough to know what he was saying. In addition, there is ample testimony from the police officers to support the contention that defendant was coherent and capable of understanding questions. Thus, the trial judge's ruling on this issue will not be overturned.
Defendant's third reason in support of this argument is that the voluntariness of his statement is vitiated by the severe pain and loss of blood from his wounds inflicted by the dog.
Although defendant had several wounds on his hands, shoulder and upper arms which were severe enough to require treatment at a hospital, there is no medical evidence presented that the nature of the injuries was of such severity as to exclude the statement as voluntary. Two police officers testified that the defendant was bleeding but not excessively. For the lack of positive evidence in favor of the defendant, his reasons here are without factual basis and, therefore, without merit.
The fourth reason that defendant argues to suppress his inculpatory statement is the cumulative effect of all the previous factors in addition to:
(3) Threat of further injury, due to the continued presence of the dog;
(4) Absence of counsel;
(6) Absence of impartial witnesses;
(7) The hour and isolated location of custodial interrogation;
(4) The number (six) of armed policemen conducting the interrogation.
The record reflects that the dog was put back in his own car after the defendant was handcuffed. It also reflects that defendant was placed alone in the back seat of the police vehicle. Three officers stood outside of the opened back car door as one read the Miranda rights. There was no policeman in the patrol car with defendant nor was there any testimony that anyone threatened or coerced the defendant into making a statement. Since the statement was spontaneous there was no opportunity for counsel to be present. The admissibility of a custodial and spontaneous confession has already been discussed. The cumulative effect of these factors is not so great as to vitiate the voluntariness of the statement under a totality of circumstances test. What this court said in Robinson, supra, can be repeated here:
"... Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influences, are admissible in evidence without Miranda warnings even where a defendant is in custody. State v. George, 371 So.2d 762 (La.1979); State v. Thornton, 351 So.2d 480 (La.1977); State v. Sockwell, 337 So.2d 451 (La.1976); State v. Thomas, 310 So.2d 517 (La.1975); State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972); State v. Hall, 257 La. 253, 242 So.2d 239 (1970)."
Consequently, this fourth reason lacks merit for suppressing the inculpatory statement. *656 Since none of the previous three reasons merits consideration, the whole argument is groundless.
This argument lacks merit.
In Assignment of Error No. 3, defendant objects to the trial court's reading of a special charge on flight to the jury. The charge was as follows:
"If you find that the defendant fled immediately after a crime was committed or after he was accused of a crime, flight alone is not sufficient to prove that he is guilty. However, flight may be considered in light of all of the other evidence. You must decide whether such flight was due to consciousness of guilt, or to other reasons unrelated to guilt."
This court allowed a charge on flight in State v. Burge, 359 So.2d 616 (La. 1978), even though in that case there was a negligible degree of relevance. In Burge, supra, the flight occurred from other than the scene of the crime and some twelve days after the crime, when he was confronted by an arresting officer. In the instant case, defendant fled from near the crime scene within minutes of the burglary alert. The flight goes to the weight and credibility of the evidence and would be a proper jury charge within the scope of La.C.Cr.P. art. 802(3).
This argument lacks merit.
In regard to Assignments of Error Nos. 4 and 5, defendant claims the trial court erred in failing to sentence defendant in accordance with the guidelines of La.C. Cr.P. art 894.1 and also by imposing an excessive sentence inappropriate to the seriousness of the crime.
Defendant argues that the judge did not reiterate the factual basis for his conclusions, but that he merely repeated the language of the statute, that defendant would be an undue risk to society if given probation; that he is likely to commit another crime; that a lesser sentence would deprecate the seriousness of the crime; and that, although there are no previous felonies, defendant's misdemeanors show he has a propensity for crime. Defendant complains that the judge failed to articulate the basis for these conclusions.
Before reviewing the guidelines established in art. 894.1, it should be noted this court has held that the imposition of a sentence, even though within the statutory limits, may violate a defendant's right under the Louisiana Constitution against excessive punishment. Thus, it has been determined that excessiveness of sentence poses a question of law reviewable under the appellate jurisdiction of the Supreme Court. State v. Sepulvado, 367 So.2d 762 (La.1979). Sepulvado further states that the trial court must articulate specific reasons for an apparently severe sentence in relation to the particular offender and the actual offense. While the trial court need not articulate every aggravating and mitigating circumstance presented in 894.1, the record must reflect that it adequately considered these guidelines in particularizing the sentence to the defendant. State v. Vaughn, 378 So.2d 905 (La.1979); State v. Franks, 373 So.2d 1307 (La.1979). Thus, while the defendant's sentence here does not exceed the maximum allowed for attempted simple burglary, six years, the sentence may nonetheless be reviewed to determine if the trial court complied with art. 894.1 and if it exceeded its discretion in sentencing. As a general rule, a sentence is excessive, "if it is grossly out of proportion to the severity of the crime, or it is nothing more than the purposeless and needless imposition of pain and suffering." State v. Bonanno, 384 So.2d 355, 357 (La.1980).
In the instant case, the judge gave meager factual reasons for the imposition of imprisonment by La.C.Cr.P. art. 894.1(A)[1]. The only facts that the judge mentioned *657 were general statements referring to the defendant's criminal history:
"You have not had a previous felony conviction, but you have had several misdemeanors and some near misses. You certainly show a criminal record and repetition."
But the judge failed to mention any specific misdemeanors or their frequency. The imposition of sentence seems to be based on the judge's opinion that defendant lied on the stand and on the fact that he had refused a plea bargain:
"You're very fortunate that the State cannot double bill you at this time because I [you] personally got on the witness stand and lied and perjured yourself, and when somebody does that and doesn't take the plea to begin with that is offered, and I'm convinced later that they have not told the truth to try to get out of it, I am usually ready to throw a good sized book at them. That is partially true in your case, partially not."
The fact that defendant did not accept a plea bargain is not a factor listed in La.C. Cr.P. art. 894.1 nor is the judge's opinion of the witness' credibility. These are not facts that can form the basis for a sentence under the statute.
The United States Supreme Court stated that a defendant's truthfulness while testifying in his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relative in sentencing. United States v. Grayson, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). The court further stated that a judge is not required to enhance a sentence of a defendant whose testimony he deems false but the court emphasized that the truthfulness of the defendant must be assessed "in light of all the other knowledge gained about the defendant, the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful society." Grayson, supra, 98 S.Ct. at 2618. Thus, the U.S. Supreme Court requires "other knowledge" about the defendant in addition to his truthfulness, or lack thereof, to form a basis for the sentencing.
This court frowned upon use of a defendant's perjury as justification for a sentence in State v. LaFleur, 391 So.2d 445 (La.1980). Defendant was convicted of perjury and when sentenced the trial judge made no reference to statutory factors nor was there any indication that he took them into consideration since the judge said only that he hoped the relatively harsh penalty imposed would teach the community to speak the truth. This reasoning was considered so "inadequate as to render unfeasible an evaluation of the appropriateness of a sentence, remanded for resentencing." LaFleur, supra, at 447. Although, in the case at bar, the judge did refer to art. 894.1, he failed to mention "other knowledge about the defendant." He merely repeated the language of the statute:
"Sentence for incarceration, reasons under Article 894.1, the Defendant is in need of correctional treatment of a custodial environment and a lesser sentence will deprecate the seriousness of the Defendant's crime. Also, there's an undue risk that during the period of suspended sentence of probation the Defendant will commit another crime, because he does show a criminal history. Good luck to you, Mr. Smith. I mean that. I hope all of you, I will not see you back here. Somehow, some way, you might get out and not repeat what has gone before again.
"(End of Proceedings)"
This court in State v. Fields, 394 So.2d 597, 600 (La.1981), restated that:
"...[t]o merely recite factors set forth in the sentencing statute which support imprisonment, but not to state considerations taken into account or the factual basis therefor in imposing sentence, does not satisfy Article 894.1. State v. Little, 377 So.2d 332 (La.1979); State v. Watson, 372 So.2d 1205 (La.1979).
*658 Since the only basis for sentencing that the trial judge mentioned were the truthfulness of the defendant, his refusal of a plea bargain and his prior record (with no specificity), this case must be remanded for resentencing under the guidelines of La.C. Cr.P. art. 894.1 which demands that the court particularize the sentence to the defendant and the offense.
The defendant also contends that the four years at hard labor is an excessive sentence although within the statutory limits for attempted burglary. The judge never addressed the aggravating or mitigating circumstances that influenced his decision on the length of the sentence. He merely stated that the defendant was sentenced to hard labor since parish prison was overcrowded.
This court in State v. Fields, supra, at 600, restated the standard for measuring excessive sentencing.
"In State v. Sepulvado, 367 So.2d 762 (La.1979), we stated that the statutory criteria provided by LSA-C.Cr.P. Article 894.1 are appropriate criteria by which to measure whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous alternatives. We further noted that the trial judge's reasons in imposing sentence, as required by this statute, are an important aid to this Court when called upon to exercise its constitutional function to review a sentence complained of as excessive. Absent compliance with LSA-C.Cr.P. Article 894.1 as in the instant case, we lack the necessary information by which to measure whether the sentence imposed is excessive. See also State v. Bourgeois, 388 So.2d 359 (La. 1980); State v. Daranda, 388 So.2d 759 (La.1980)."
Since in this case, the judge gave only nominal recognition to the statutory requirements of art. 894.1, there is little to review for excessive sentencing. The record reflects mitigating circumstances, which the judge never mentioned, some of which are: Attempted burglary of less than twenty dollars worth of foodstuff, burglary of an unoccupied building, and no use of a weapon. Since there are no facts to review for excessive sentencing, this case should be remanded so that mitigating and aggravating circumstances are made part of the record to support the length of time imposed by the trial judge.
In Assignment of Error No. 6, defendant contends that the trial court committed reversible error in upholding the verdict of the jury when there was insufficient evidence upon which a verdict of guilty could be found.
La.Const. 1974, Article V, § 5, limits review of this court in criminal cases to questions of law only. In the past, this court has refused to review sufficiency of evidence in criminal cases except where there was a total lack of evidence. But the Supreme Court has established a change for review standards in State v. Landry, 381 So.2d 462, 466 (La.1980):
"Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) appears to dictate a change in our former jurisprudence concerning the scope of review in a criminal matter. Jackson, supra, held that the due process clause of the United States Constitution prohibits conviction of crime except on proof sufficient to convince the trier of fact of the existence of every essential element of the offense beyond a reasonable doubt. Under Jackson, supra, it seems the test may no longer be whether there is some evidence of guilt. Reversal of a conviction is mandated where the proof of guilt is such that no rational trier of fact could find guilt beyond a reasonable doubt."
Applying Jackson, supra, herein, the defendant's inculpatory statements are in themselves sufficient evidence to support a rational trier of fact's returning a verdict of guilty beyond a reasonable doubt.
Accordingly, this assignment lacks merit.
For the above reasons, this case is remanded to the trial court for re-sentencing in compliance with the opinion expressed herein.
*659 In all other respects, the conviction is affirmed.
REMANDED FOR RE-SENTENCE.
NOTES
[*] Judges Chiasson, Edwards and Lear of the Court of Appeal, First Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon, Justices Marcus, Blanche and Lemmon.
[1] Art. 894.1. Sentence guidelines; generally

A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.