807 So.2d 252 (2000)
STATE of Louisiana
v.
Kristopher SCHOENING.
No. 00-764.
Court of Appeal of Louisiana, Third Circuit.
December 20, 2000.
F. Wayne Frey, Assistant District Attorney, Lake Charles, LA, Counsel for State of Louisiana.
Louisiana Appellate Project, Edward K. Bauman, Lake Charles, LA, Counsel for Defendant, Kristopher Schoening.
Court composed of COOKS, AMY, PICKETT, Judges.
COOKS, Judge.
Kristopher Schoening was charged by bill of indictment, along with four co-defendants, with committing five counts of aggravated rape, in violation of La.R.S. 14:42, and one count of armed robbery, in violation of La.R.S. 14:64. The bill was amended on September 19, 1999 to charge each defendant with one count of aggravated rape. The armed robbery count was charged only against co-defendant Michael Guillory. Schoening pled not guilty and *253 not guilty by reason of insanity on December 16, 1998. After a sanity commission hearing held on October 13, 1999, the trial court found Schoening competent to stand trial. On November 12, 1999 the trial court denied Schoening's motion to suppress video and handwritten statements given to investigating police officers, but granted the motion suppressing his oral statement. A jury unanimously found Schoening guilty of committing one count of aggravated rape. The trial court sentenced Schoening to serve life imprisonment without benefit of probation, parole, or suspension of sentence. Schoening appeals his conviction arguing two assignments of error.

FACTS
VC testified at trial that she met co-defendant Michael Guillory when she was first admitted into Briscoe's in-patient drug rehabilitation program in Lake Charles. Two weeks later, on September 28, 1998, the Center asked VC to leave for not following the rules. Upon leaving, VC tried to call someone to pick her up and take her to Opelousas from the facility's lobby, but was unsuccessful. Guillory, who was also leaving the Briscoe Center on this date, offered to help VC find a ride home. The two proceeded on foot to Dewey Miller's house at about 3:00 to 3:30 p.m. Miller, a friend of Guillory's mother, let VC use the phone to try to find a ride to Opelousas. VC used the phone and stayed at Miller's house for approximately forty-five minutes.
Guillory and VC left Miller's residence and encountered the defendant, Schoening, who was driving a blue pick-up truck. Guillory, VC and Schoening proceeded to a nearby gully and smoked a marijuana filled cigar. After Guillory and Schoening assured VC they would find her a ride, the three proceeded to the house where the rapes occurred.
VC testified when she entered the house she saw Randy "Pops" McDonald, Forest "Red" Bradford, and Michael C. Hoffpauier lying around watching television. After some time passed, Schoening and Guillory decided to leave and told VC to stay at the house. VC testified she was drinking a "Mickey" (a large beer) and shared her Xanax with the men. She was very relaxed, a little bit "out of it," but very aware. At some point, someone told her to go to the back room to see about getting a ride. "Red" was in the bedroom and told her he had a ride for her but he wanted her to have sex with him in return. She said no. "Red" told VC that if she did not do what he wanted, he would hurt her. He then started unlacing her boots and ordered her to remove them. VC testified "Red" forced his penis in her mouth, then took off her clothes and raped her. When he finished, "Red" told her to stay on the bed naked and he left the room. She decided to put her clothes on.
"Red" came back in and told her she had to give "Pops" some. She again said no. Guillory and Schoening entered the room and turned out the lights. She stated Schoening pointed a gun at her and told her he would kill her if she did not stop screaming. "Pops" raped her twice, once vaginally and once anally. She stated the men took turns with her; and Schoening was the third man to rape her. VC testified he placed a gun into her mouth after she told him no. He then put a pillow over her head and hit her in the head five times with the gun because she was screaming. She "got quiet" because she was scared.
After the men left the room, she put on her underwear, pants, socks and shoes. She could not find her brassiere or shirt, so she picked up a shirt from the floor and put it on. VC testified she walked outside *254 the house with Schoening and Guillory. "Pops" called her back inside the house and made her sit on his lap. He told her he loved her and that is why he did it to her. Guillory walked VC halfway back to Briscoe and she ran the rest of the way. When she arrived at the facility, she banged on the locked doors until someone came. She told them what happened and they called the police. VC was transported to St. Patrick's Hospital emergency room, spent the night there, and gave a statement to police the next morning. Later that day, Schoening and his co-defendants were arrested for aggravated rape.
ASSIGNMENT OF ERRORS
1. The trial court erred in denying Defendant's Motion to Suppress.
2. The verdict of the jury was contrary to the law and evidence, when viewed in a light most favorable to the prosecution, for the jury to find the defendant guilty of the crime charged beyond a reasonable doubt.

LAW AND DISCUSSION

Errors Patent
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we have discovered one patent error. The trial court improperly informed the defendant that he had two years from the date of sentencing to file an application for post-conviction relief. Defendant has two years after the judgment of conviction and sentence have become final to apply for post-conviction relief. La.Code Crim.P. art. 930.8 The trial court is directed to properly inform defendant of the delay by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that he received the notice in the record of this proceeding. See State v. Dozier, 97-1564 (La.App. 3 Cir. 5/20/98); 713 So.2d 729, writ denied, 98-1694 (La.11/25/98); 729 So.2d 573.

Assignment of Error No. 2.
We address Schoening's sufficiency argument first pursuant to State v. Hearold, 603 So.2d 731 (La.1992) and State v. Taylor, 96-320 (La.App. 3 Cir. 11/6/96); 683 So.2d 1309, writ denied, 96-2828 (La. App. 3 Cir. 6/20/97); 695 So.2d 1348. Schoening contends the evidence presented at trial was insufficient to convict him of aggravated rape. He contends that the victim's testimony was inconsistent and unclear concerning the details of the crime.
In State v. Lambert, 97-64, p. 4-5 (La. App. 3 Cir. 9/30/98); 720 So.2d 724, 726 this court held:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See King, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).
Aggravated rape is defined in La.R.S. 14:42 which provides:
A. Aggravated rape is a rape committed upon a person sixty-five years of *255 age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
(6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.
B. For purposes of Paragraph (5), "participate" shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
At trial, VC identified Schoening as the third individual to rape her and the one who hit her in the head with the pistol and threatened to kill her if she did not stop screaming. She further testified Schoening placed the gun in her mouth to keep her quiet. VC admitted taking Xanax, smoking marijuana, and drinking alcohol that evening, but testified she was very aware of the events taking place. Dewey Miller corroborated VC's testimony, testifying Schoening came to his house at 6:00 a.m., the morning following rape, and bragged to him that he, Guillory, and three other guys "gang-banged" VC. Miller testified later that day, Schoening told him he threatened VC with a pistol, hit her with it, and put the gun in her mouth during the incident.
In statements given to police officers, Schoening admitted he forced VC to perform oral sex on him. In the videotaped statement introduced into evidence, Schoening stated the incident began when he and the others watched "Red" have consensual sex with VC. Schoening admits he pointed a gun at her when she tried to escape and told her to stop. When she screamed, Schoening said he placed a gun to her head and then put it in her mouth to shut her up. He admitted hitting VC with the gun while a pillow was on her head. Schoening also stated VC begged him not to kill her during the rapes. Although Schoening does not confess to having sexual intercourse with the victim without her lawful consent, his admissions corroborate much of VC's testimony.
Beyond any reasonable doubt, the elements of aggravated rape were satisfied by the evidence when viewed in the light most favorable to the prosecution. This assignment of error is without merit

Assignment of Error No. 1.
By this assignment, Schoening argues the trial court erred in denying his Motion to Suppress a videotaped statement and a handwritten statement, which he gave to police, because the State failed to meet its burden of proving that he gave the statement freely and voluntarily after a knowing waiver of his Miranda rights. The defendant argues that the cumulative effect of Xanax, alcohol, marijuana, and mental illness may have affected his ability to understand his constitutional rights.
The Louisiana Supreme Court set forth the law concerning a claim of intoxication in the case of State v. Robinson, 384 So.2d 332, 335 (La.1980):

*256 Where the free and voluntary nature of a confession is challenged on the ground that the accused was intoxicated at the time of interrogation, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. State v. Rankin, 357 So.2d 803 (La. 1978). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. State v. Hutto, 349 So.2d 318 (La.1977).
At the hearing, the detectives who interviewed the defendant each testified Schoening gave his statements freely and voluntarily, in the absence of any threats or promises made by them. Detective Steve Rathjen testified he read defendant his rights listed on the rights waiver form, before Detective Leroy conducted the interview, and defendant signed the form at 3:45 p.m. on September 29, 1998. Both detectives Rathjen and Leroy testified, at the time Schoening voluntarily gave his statement, he did not appear to be acting under the influence of drugs or alcohol.
Detective Ricky Nix testified he conducted the videotaped interview with Schoening at 11:19 p.m. on September 29, 1998. He confirmed Schoening was advised of his rights pursuant to the waiver he signed earlier. Detective Nix read the rights form to defendant on tape and he agreed to talk.
The State introduced in evidence a waiver of rights form signed by Schoening prior to the interviews. The videotaped statement begins with Detective Nix reciting defendant's rights as listed on the waiver of rights form which Schoening agreed to waive before speaking to Detective Nix. The detectives testified Schoening did not appear to be acting under the influence of drugs or alcohol but appeared very sober and cooperative. Schoening testified he smoked marijuana, took Xanax, and consumed alcohol on the night before he gave statements to the police. But there is no evidence in the record indicating he was intoxicated or suffering from the effects from drugs at the time he executed the waivers. Even if Schoening felt some residual effects of the prior night's drug use, there is no evidence that his mental faculties were so diminished that he could not understand the consequence of his decision to abandon his rights by executing a waiver of rights form. The trial judge's ruling denying the Defendant's Motion to Suppress was clearly supported by the evidence. We find this assignment of error is without merit.

CONCLUSION
The Defendant's conviction is affirmed. The case is remanded and the trial court instructed to inform Kristopher Schoening that he has two years after the judgment of conviction and sentence becomes final to apply for post-conviction relief. As instructed, the trial court shall send the appropriate written notice to Schoening within ten days of the rendition of this opinion and file written proof that he received the notice into the record of the proceedings.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.