796 So.2d 907 (2001)
STATE of Louisiana
v.
William Jeffery CRAFT.
No. 01-248.
Court of Appeal of Louisiana, Third Circuit.
October 3, 2001.
*908 Loren M. Lambert, Assistant District Attorney, Alexandria, LA, Attorney for the State of Louisiana.
*909 Edward K. Bauman, Louisiana Appellate Project, Lake Charles, LA, Attorney for the Defendant-Appellant William Jeffery Craft.
Court composed of NED E. DOUCET, JR., Chief Judge, MARC T. AMY, and OSWALD A. DECUIR, Judges.
DOUCET, Chief Judge.
The Defendant, William Jeffery Craft, seeks review of his convictions and sentences for possession of controlled dangerous substances, schedules II and IV, violations of La.R.S. 40:967(C) and 40:969(C), respectively.
On the evening of November 20, 1999, Ray Crooks saw an eighteen-wheel truck rig turn into his neighbor's driveway, go through the neighbor's yard and pasture, head toward the bayou, turn around and travel back up a ditch located between their houses. Next, the driver tried to turn south through a ditch and return to Highway 457, did not succeed, backed up and went north on Highway 457, toward LSUA Road. Mr. Crooks notified the Sheriffs office while his wife, Annette Crooks, and sister-in-law, Nancy Ardoin, followed the truck in their vehicles.
The truck turned left onto Highway 3170 and pulled off on the shoulder at a bridge, providing Mrs. Crooks the opportunity to record its license plate number. The truck left the shoulder and traveled in the same direction until it reached Highway 71. At the intersection, the truck turned south on Highway 71, without stopping at the stop sign, and went toward Lecompte. The driver turned the truck around on the highway, crossing all four lanes of traffic and the edge of the ditch, and returned north, toward Alexandria. After passing the Van Mol Store, the driver turned around again, crossing all four lanes of traffic, and headed back toward Lecompte until he reached the Dean Lee Agriculture Center. The driver turned the truck around again, crossing all four lanes of traffic. When he reached LSUA Road, he traveled on the service road and stopped at the Van Mol Store. After a few minutes, he went to the Wal-Mart warehouse where he drove around the building and parked on its north side. Deputy Randall Iles of the Rapides Parish Sheriffs Office found the parked truck there. He arrested the Defendant after finding on the console of the truck a prescription bottle bearing the name of Tanya Guidry containing two types of pills. The pills recovered were tested and determined to contain pethidine and alprazolam, which are controlled dangerous substances, schedules II and IV.
Following a trial by a district judge on December 7, 2000, the Defendant was found guilty on both counts. He waived the delay for sentencing and was sentenced to two years at hard labor on each count to run concurrently with each other but consecutive to the sentence he was serving at the time of sentencing. The court also ordered restitution of two hundred fifty dollars to be paid to Ervin Reynaud for damage to his yard and trees. The court added that if the amount is not paid upon the Defendant's eligibility for parole, then payment would be a condition of his parole.

SUFFICIENCY OF THE EVIDENCE
The Defendant argues that the evidence presented at trial was insufficient to sustain the convictions. In State v. Carthan, 99-512, p. 4 (La.App. 3 Cir. 12/8/99); 765 So.2d 357, 360, writ denied, 00-359 (La.1/12/01); 778 So.2d 547, this court stated:
In reviewing the sufficiency of the evidence to support a criminal conviction, the critical inquiry on appeal is whether the evidence supports a finding of *910 guilt beyond a reasonable doubt. "The relevant question on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime [proved] beyond a reasonable doubt." State v. Daigrepont, 560 So.2d 959, 960 (La.App. 3 Cir.), writ denied, 566 So.2d 396 (La.1990) (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The Jackson standard allows an appellate court "to impinge `on the actual factfinder's discretion... only to the extent necessary to guarantee the fundamental protection of due process of law.'" State v. Juluke, 98-341, p. 4 (La.1/8/99); 725 So.2d 1291, 1293 (quoting State v. Mussall, 523 So.2d 1305, 1310 (La.1988) (alteration in original)). "Given this limited purpose, the Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the factfinder at trial." Id. See also State v. Williams, 98-1146 (La.App. 5 Cir. 6/1/99); 738 So.2d 640.
To sustain the Defendant's convictions, the State needed to prove beyond a reasonable doubt the Defendant knowingly and intentionally possessed substances classified in schedules II and IV of La.R.S. 40:964.

Possession
The Defendant asserts that the State failed to prove he knowingly and intentionally possessed the drugs in question. He contends that his sister, Tanya Craft, received prescriptions for the drugs in 1998 and he was "simply bringing her belongings to her home, and the prescription medicine in question was in a black bag containing her belongings." Additionally, the Defendant argues that the statement in which he indicated that he took one pill from each medicine bottle should not have been considered because the pills he took were never specifically identified. He argues that there may have been more than two types of pills in the bottles before the bottles were recovered.
Deputy Randall Iles testified that a prescription bottle containing four pills was found in the console of the truck. The lab report, however, indicates that the bottle contained a total of five pills, two red capsules containing pethidine and three blue oval tablets containing alprazolam. Deputy Iles added that, in response to his inquiry about the pills, the Defendant stated that the pills belonged to him, that he had taken one of each and that the prescription bottle belonged to Tanya Guidry. The trial court ruled that this statement made by the Defendant after he was advised of his Miranda rights was free and voluntary.
Tanya Craft, testified that she is the Defendant's sister and that the pills belonged to her. She explained that the pills were in her black bag in the Defendant's truck because he was bringing them home for her while she was in the hospital having a transplant.
In its reasons for judgment, the trial court stated:
Even if the prescription was written to you and it was for you and had your name on it, you would still have that burden of proving that. And you would have to show that it was in the course of his professional practice. So we didn't have that. He had a prescription that was two (2) years oldwell, not two (2) years old. It was one (1) year old, that was in your sister's name, and you were in possession of it, and you were using that while you were driving that vehicle. So there was no defense that was presented to me that is acceptable under the law. So I find that you're also guilty of possession of a Schedule II substance and a Schedule IV substance.
*911 Considering the testimony, we find that the State presented sufficient evidence to show that the Defendant had the specific intent to possess the pills found on the console of the truck. At the time of his arrest, the Defendant told Deputy Iles that the pills in the bottle belonged to him. His statement did not differentiate between the different types of pills. Based upon the evidence presented, the trial court made a credibility determination and was free to believe or reject any of the evidence.

Identity
The Defendant further argues that he should not have been found guilty as charged because there was no indication that he was the same person arrested by authorities. He contends that Deputy Iles was uncertain that the Defendant was the same person he arrested the night of the offense.
When Deputy Iles was asked at trial if the person he arrested on the night in question was present in the courtroom, he said he believed it was the Defendant although his appearance had changed somewhat.
Although Deputy Iles was initially uncertain that Craft was the person he arrested, he was able to identify the Defendant with certainty after reviewing the photo taken at the time of the arrest and comparing it to Craft. Accordingly, the record supports the trial court's conclusion that Craft knowingly and intentionally possessed the drugs in question, and thus, this assignment is without merit.

VOLUNTARINESS OF THE STATEMENT
The Defendant asserts that the trial court erred in concluding that his statement to Deputy Iles was free and voluntary. As a result, he argues that it should not have been admitted into evidence. According to Deputy Iles, the Defendant stated that the pills found in the console of the truck belonged to him, that he had' taken one of each kind and that the prescription bottle belonged to Tanya Guidry.
In State v. Robinson, 384 So.2d 332, 335 (La.1980), the supreme court addressed the issue of intoxication when challenging the admissibility of a confession:
Where the free and voluntary nature of a confession is challenged on the ground that the accused was intoxicated at the time of interrogation, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. State v. Rankin, 357 So.2d 803 (La. 1978). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. State v. Hutto, 349 So.2d 318 (La.1977).
See also State v. Schoening, 00-764 (La. App. 3 Cir. 12/20/00); ___ So.2d ___, 2000 WL 1855099.
Deputy Iles testified that the Defendant's truck was running when he arrived on the scene with another officer. With the blue overhead lights on, Deputy Iles hit the siren, blew the air horn and used the P.A. system in an attempt to get the Defendant to exit the truck. When the Defendant did not respond, Deputy Iles approached the truck and knocked on the door. The Defendant did not respond. The officers looked into the truck and noted *912 that no one was in the front seats and the back part was closed.
Deputy Iles explained that they backed away from the truck, checked the area to make sure no one was around, approached the truck again and noticed a lot of mud and debris on the front end of the truck. Finally, the officers opened the passenger door and identified themselves as police officers. When there was no response, Deputy Iles tapped on the divider clips which led to the sleeper compartment of the truck. According to Deputy Iles, the Defendant responded, "Okay. Okay, I'm getting up. I'm getting up ..." and opened the visor and got out of the truck.
Deputy Iles testified that when the Defendant got out of the truck, he stumbled out and was incoherent, "like he was real tired or he was real sleepy." He described the Defendant as having a drowsy look. Deputy Iles commented that he did not know how the Defendant could have been sleeping, considering how much they had beaten and banged on the truck. Deputy Iles advised the Defendant of his Miranda rights. He testified that the Defendant appeared to understand his rights and was not too incoherent to understand.
On cross-examination, Deputy Iles testified that the Defendant was not totally incoherent. He stated that the Defendant had slurred speech, slow movements and his eyes were closed. Deputy Iles described the Defendant's speech as drawn out and somewhat slurred.
Deputy Iles opined that the Defendant understood what they were talking about during the interview and appeared to be a person who could understand a basic conversation in spite of the fact that he stumbled out of the truck and his speech was slurred. On re-direct, Deputy Iles testified that based upon his experience, he did not think that the Defendant was under the influence of drugs or alcohol to the extent the Defendant could not understand what he was saying. Again, he testified that the Defendant appeared to understand his rights as read to him from the card.
After he was advised of his Miranda rights, the Defendant began talking to the officers. Deputy Iles testified that he believed that the Defendant's statements were not making any sense at first. When questioned about his whereabouts, the Defendant indicated to Deputy Iles that he was behind a friend's store on Highway 190 when, in fact, he was located behind a Wal-Mart warehouse on Highway 71. He was unaware that his truck had reportedly run off the road and damaged property on Highway 457. Deputy Iles testified that during the interview, the Defendant's motor function was impaired and his speech was slurred. He explained that the Defendant thought hard about every question before answering. Also, according to Deputy Iles, when they picked up the handcuffed Defendant from a sitting position to walk to the police car, it took a lot of effort and the Defendant did not walk well to the car. The Defendant required assistance to get into the car.
In State v. Guillory, 97-179, pp. 16-18 (La.App. 3 Cir. 3/11/98); 715 So.2d 400, 410-11, writ denied, 98-0955 (La.10/9/98); 726 So.2d 17, this court stated that:
A review of reported decisions reveals that the courts have admitted confessions in situations where the defendant has admitted to using drugs shortly before the confession. For example, in State v. Williams, 602 So.2d 318 (La. App. 1 Cir.), writ denied, 605 So.2d 1125 (La.1992), the defendant had a blood alcohol level of 0.169, and a drug screen test revealed the presence of cocaine metabolites and cannabinoids. However, there was no testimony given as to the amount of drugs the defendant had *913 ingested, or when he had ingested the drugs. The court ruled that simply because a defendant had used drugs or alcohol, or both, did not per se render his confession invalid. These factors are simply one of the circumstances the court examines when assessing the voluntariness of a confession. In Williams, the court noted that the defendant was able to answer the questions with reasonably direct responses, expressed his thoughts in an appropriate manner, and he was able to correct written mistakes. Therefore, the court of appeal reversed the trial court's ruling suppressing the confession.
In State v. Davis, 92-1623 (La.5/23/94); 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994), the Louisiana Supreme Court upheld a trial court's decision that a defendant's confession was free and voluntary even though the defendant had smoked three or four rocks of crack cocaine twenty-four hours before his confession and he had consumed three or four beers earlier in the day of his confession. The court noted that the defendant appeared coherent, and he was able to explicitly recount the details of the crime.
In State v. Green, 613 So.2d 263 (La. App. 4 Cir.1992), the defendant sought to suppress his confession claiming he was under the influence of crack cocaine at the time of his confession. The detective who interrogated the defendant testified the defendant knew exactly what he was saying and had complete control of himself. The court refused to suppress the confession, finding the defendant freely and voluntarily waived his Miranda rights, and that he was not so intoxicated he was unconscious of the consequences of what he was saying.
In State v. Rose, 606 So.2d 845 (La. App. 2 Cir.1992), the defendant claimed the alcohol and cocaine she had consumed rendered her incapable of giving a free and voluntary statement. The detective interrogating the defendant noticed track marks on her arms and smelled alcohol on her breath, but felt her general demeanor and responses to his questions indicated an ability to comprehend the situation and to knowingly and intelligently waive the right to remain silent. Therefore, the defendant's motion to suppress was denied.
In Guillory, two experts gave conflicting opinions about the defendant's condition at the time of his confession. Additionally, the police officers who had contact with the defendant on the night of his confession testified at the pretrial hearing that the defendant did not appear intoxicated from cocaine. This court noted that "[t]he test set forth in Robinson is not simply did the defendant use alcohol or drugs, but did the use of these substances negate the defendant's comprehension and render him unconscious of the consequences of what he is saying." Id. at 411. Considering this, the court concluded that "[a]lthough the Defendant presented evidence concerning his intoxication at the time of his confession, the State presented sufficient evidence to prove that the defendant freely and voluntarily waived his right to remain silent and to consult with an attorney before he gave his confession." Id. at 411.
Although the record herein supports the contention that the Defendant may have been under the influence of drugs, the State presented sufficient evidence to prove that the Defendant freely and voluntarily waived his right to remain silent and to consult with an attorney before he spoke with Deputy Iles. Additionally, the evidence presented at trial did not establish that the Defendant was under the *914 influence of drugs to a degree that it negated his comprehension and rendered him unconscious of the consequences of what he said to police officers.
The Defendant also complains that at trial Deputy Iles could not remember the exact rights that were waived by the Defendant, although the deputy testified that he read the Defendant his Miranda rights from a card not introduced into evidence. Although Deputy Iles was unable to recite the Defendant's Miranda rights from memory, his testimony indicates that he relied upon a card when he advised the Defendant. He added that he routinely refers to a card to advise a suspect of his Miranda rights and that the card was a standard card issued to deputies. Although the card used was not introduced into evidence, the Defendant did not introduce any evidence at trial to challenge Deputy Iles' use of the card or the validity of the rights as reflected on the card.
Accordingly, we find that the State presented sufficient evidence to prove that the Defendant was properly Mirandized and that the Defendant's statement was free and voluntary.

EXCESSIVE SENTENCE
The Defendant next contends that the sentences imposed by the trial court were cruel, unusual and excessive.
A review of the record indicates that neither an oral nor written motion to reconsider the sentence was filed. La. Code Crim.P. art. 881.1(D) provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
See also State v. Texada, 98-1647 (La.App. 3 Cir. 5/5/99); 734 So.2d 854; State v. King, 95-344 (La.App. 3 Cir. 10/4/95); 663 So.2d 307, writ denied, 95-2664 (La.3/15/96); 669 So.2d 433. Therefore, the Defendant's failure to timely file a motion to reconsider his sentences precludes this court from entertaining a claim of excessiveness of sentence on appeal.

INEFFECTIVE ASSISTANCE OF COUNSEL
In the alternative, the Defendant argues that his trial counsel was ineffective for failing to file a motion to reconsider the Defendant's sentences.
As stated by this court in Texada, 98-1647; 734 So.2d at 864:
A failure to file a motion to reconsider sentence does not in itself constitute ineffective assistance of counsel. However, if the defendant can show a reasonable probability that, but for counsel's error, his sentence would have been different, a basis for an ineffective assistance claim may be found. State v. Hayes, 97-1526 (La.App. 1 Cir. 5/15/98); 712 So.2d 1019, 1022.
The penalty for possession of a controlled dangerous substance, schedule II and IV, is not more than five years, with or without labor, and a possible fine of not more than five thousand dollars. La.R.S. 40:967(C) and 40:969(C). The Defendant's sentences, two years on each count, were less than half of the maximum possible sentence. Additionally, the Defendant benefitted from the fact that the trial court did not impose a fine and the sentences were ordered to run concurrently.
At the Defendant's sentencing, the court confirmed that the Defendant was already serving a five-year hard labor sentence, three years suspended, for a prior charge *915 for attempted manufacturing of methamphetamine. The trial court requested a copy of the Defendant's "rap sheet" and reviewed it for the record. The court noted that the Defendant had prior arrests in 1993, 1994 and 1995 for aggravated assault, criminal trespass, unauthorized entry, second degree battery, cruelty and unauthorized entry into an inhabited dwelling. In 1997, the Defendant had been arrested for non-support.
After the sentencing delay was waived, the trial court sentenced the Defendant to serve two years at hard labor on each count to run concurrently with each other but consecutive to the sentence he was presently serving. The Defendant asked the court why his sentences were ordered to run consecutive to the sentence he was then serving. The Defendant told the court that he was trying to get his life turned around and to get back to his children who needed him. The trial court responded that it was "not in favor of a lot of concurrent time" and noted the seriousness of the Defendant's offense: damaging someone's property by driving his vehicle through it, and subjecting people to the possibility of serious injury by driving recklessly on a busy four-lane road. The court's responses show that it considered the circumstances of the Defendant's case and articulated them for the record at sentencing. The record supports the Defendant's sentences. They are not grossly out of proportion to the severity of the crimes or a needless and purposeless imposition of pain and suffering.
Since the Defendant has failed to show that a motion to reconsider the sentences would have resulted in different sentences, the failure of Defendant's counsel to file a motion to reconsider his sentences does not constitute ineffective assistance of counsel. See Texada, 98-1647; 734 So.2d 854; State v. Lee, 26,542 (La.App. 2 Cir. 5/12/94); 636 So.2d 634.

PAROLE CONDITIONS
The Defendant next complains that the trial court erred in imposing restitution as a condition of parole. The trial court ordered the Defendant to pay two hundred fifty dollars in restitution, and if any was due upon his eligibility for parole, the court ordered the payment as a condition of parole. As noted by this court in State v. Foshee, 99-1423 (La.App. 3 Cir. 4/5/00); 756 So.2d 693, the Board of Parole alone may place such conditions on a defendant's parole under La.R.S. 15:574.4. The trial court is not authorized to do so. Therefore, the condition placed on the Defendant's parole is vacated.
The Defendant also argues that the trial court could not order him to pay restitution because he did not suspend the imposition or execution of his sentences. La.Code Crim.P. art. 883.2 provides:
In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.
Article 883.2 became effective August 15, 1999. Prior to the enactment of Article 883.2, a trial court was required to suspend all or a portion of a defendant's sentence before restitution could be imposed. State v. Narcisse, 97-3161 (La.6/26/98); 714 So.2d 698. The Defendant committed the offenses on November 21, 1999, after the effective date of Article 883.2. Therefore, the trial court was not required to suspend any part of the Defendant's sentences before ordering restitution.
Finally, the Defendant argues that there was not sufficient testimony to *916 show the value for the damage done to the yard of Ervin Reynaud. Mr. Reynaud testified at trial that his mature, fruit-bearing plum tree was worth at least five hundred dollars. He admitted that his estimate was not a "market value" of the tree but was his opinion as to its worth to his family and to the community. Mr. Reynaud's testimony at trial was undisputed. At sentencing, the trial court stated that the law required it to assign restitution and consequently ordered the Defendant to pay restitution in the amount of two hundred fifty dollars to Mr. Reynaud for damage to his yard and trees.
Article 883.2 does not provide guidance in determining the actual pecuniary loss to a victim and this court could find no jurisprudence concerning this issue. Without any evidence disputing the testimony of Mr. Reynaud concerning his loss, we find that the record adequately reflects an actual pecuniary loss as determined by the trial court.

CONCLUSION
For these reasons, the Defendant's convictions and sentences are affirmed. However, the trial court's order of restitution as a condition of parole is vacated.
AFFIRMED AND VACATED IN PART.