613 So.2d 263 (1992)
STATE of Louisiana
v.
Philip GREEN.
No. 92-KA-0499.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1992.
*265 Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for appellee.
Patricia Regan Fox, Supervising Atty., Kelly E. Barbier, Matthew T. Jarreau, Student Practitioners, Loyola Law Clinic, New Orleans, for appellant.
Before KLEES, LOBRANO and JONES, JJ.
LOBRANO, Judge.
Defendant, Philip Green, was charged by bill of information with five (5) counts of armed robbery, one (1) count of attempted armed robbery and one (1) count of first degree robbery.
Defendant was arraigned on December 19, 1990 and pled not guilty to all counts. Defendant filed motions to suppress the evidence, identification and confession which were denied March 13, 1991. Defendant applied for supervisory writs to this Court. His application was denied on April 16, 1991. State v. Green, unpub. (91-K-0631) (La.App. 4th Cir. April 16, 1991).
On July 24, 1991, the State severed three (3) of the armed robbery counts and proceeded to trial on the remaining counts. A twelve member jury found defendant guilty as charged on the first degree robbery count; guilty of attempted first degree robbery on the attempted armed robbery count; guilty of first degree robbery as to one of the armed robbery counts and not guilty as to the other count.
On August 1, 1991, defendant filed a motion for a new trial.
On August 12, 1991, the state filed a multiple bill of information; defendant filed a post verdict judgment of acquittal.
On September 10, 1991, both defense motions were denied.
On October 2, 1991, the state dismissed two of the remaining armed robbery counts.
On October 17, 1991, the trial court sentenced defendant to serve twenty (20) years at hard labor without benefit of parole, probation or suspension of sentence on each count to run concurrently.
On January 23, 1991, the state withdrew the multiple bill.

FACTS:
On October 18, 1990, the EXXON service station at 1701 Canal Street was robbed. Theodoria Thomas, the cashier, testified that defendant stuck a gun inside the cash drawer of the cashier booth and demanded the contents of the cash register. Thomas gave defendant the money. Defendant then fled. Thomas described the perpetrator as 5'6" to 5'7" tall, 160-165 pounds wearing something "blue" or "dark".
On November 6, 1990, following defendant's arrest, Thomas positively identified defendant during the physical line up of six men, as the person who robbed her on October 18, 1990.
On October 22, 1990 at approximately 6:35 p.m., the Majak Market at 3622 General De Gaulle was robbed. Casandra Adams, the cashier, testified that defendant entered the store and lifted his shirt exposing the handle of a gun protruding from his waistband. He demanded the *266 money from the register and threatened to kill Adams if she did not comply. Adams gave the money to defendant and defendant left the store. Adams immediately called the police. She described the perpetrator as 5'8" tall, 160 pounds, medium build, 30 to 32 years old, dark skinned with a mustache and wearing a dark colored sweatshirt and dark pants.
Adams also identified defendant during the November 6, 1990 line up as the person who robbed her on October 22, 1990.
On October 22, 1990, the Time Saver Store on Broadway and Claiborne Avenue was also robbed. Bridgette Miles, the cashier, testified that defendant entered the store and asked for a pack of Kool Filter King cigarettes. As she turned to give defendant the pack, she observed the handle of a gun protruding from defendant's blue jeans. Defendant then demanded the money from the register, saying, "Bitch, big cash". Miles only had several one dollar bills and a five dollar bill. When defendant realized there were no large bills he left without taking the money. Miles called the police.
Officer Deborah Prosper responded to the call. She stated that Miles described the perpetrator as 5'5", 160 pounds, 30 to 35 years old with a mustache and wearing a blue shirt and blue pants.
Just as Thomas and Adams, Miles also positively identified defendant at the November 6, 1990 line up as the person who robbed her on October 22, 1990.
On October 31, 1990, the Time Saver Store at Robert E. Lee Boulevard was robbed. Virginia Johnson, the cashier, testified that around 2:00 p.m., defendant entered the store and asked for a pack of Kool Super Long cigarettes. When Johnson rang up the sale, defendant demanded the money in the register. Johnson noticed defendant in possession of a green colored object and assumed it was a weapon. She gave defendant the money.
Arlette Armoure, manager of the store, testified that she had gone to her car to retrieve some paperwork. She observed defendant drive up to the store. He exited his car leaving the motor running and entered the store. Within minutes she saw Johnson wave her hand and motion that the store had just been robbed. Defendant exited the store and drove away. Armoure wrote down the license plate number and a description of the car. Johnson and Armoure then telephoned the police giving them the descriptive information.
Vincent Di Giorgio, Director of Security for the New Orleans Museum of Art, heard the police broadcast of the robbery. Di Giorgio was at the corner of Marconi and Harrison Avenues. Di Giorgio observed the vehicle and notified the dispatcher that he was in pursuit. Di Giorgio put his blue flashing light on and pulled defendant over to the side of the street. Defendant threw various denominations of paper money from the car window into the street. Di Giorgio pulled his gun and ordered defendant to put his hands outside the window of the car. At this time New Orleans police officers arrived at the scene. They retrieved $27.00 from the area around the car and additional money from defendant's pocket. Defendant was wearing a dark T-shirt and blue pants.
Officer Herman Cade advised defendant of his Miranda rights.
Defendant told Cade he was not armed during the robbery and was only carrying a toy airplane. Cade searched the car and found a green toy airplane and a pack of Kool cigarettes. Defendant was taken back to the Time Saver store and was positively identified by Johnson and Armoure.
At trial, Officer Cade testified that defendant told him he was a crack addict and had robbed the store to support his habit.
Defendant testified he ordered Johnson to give him the money. He stated he did not have a gun but was carrying a green toy airplane. He testified he was under the influence of crack cocaine when he committed the robbery. He denied robbing the other stores. He stated that Cade did not read him his rights on the rights of arrestee form and that he had forced him to sign the form.
*267 Defendant appeals his conviction and sentence asserting the following assignments of error:
1) The trial court erred in denying the defendant's Motions to Suppress the identification, evidence and confession due to the State's failure to carry its burden in establishing a valid waiver of rights;
2) The trial court erred in failing to suppress the physical line ups and subsequent identifications based on the exclusionary rule;
3) The trial court erred in failing to grant the defendant a post-judgment verdict of acquittal based on the fact that the state presented only uncorroborated eyewitness testimony so that the jury could not have excluded every reasonable hypothesis of innocence;
4) The trial court erred in granting a continuance of three counts in the bill of information and in granting a severance of those three counts;
5) The trial court erred in refusing to instruct the jury on the unreliability of eyewitnesses testimony.

ASSIGNMENTS OF ERROR 1 AND 2:
Defendant asserts the trial court erred by denying his motions to suppress the evidence, identification and confession.
Defendant argues that because he was under the influence of crack cocaine at the time he waived his Miranda rights, his confession was illegally obtained because the waiver was not freely and voluntarily given. He further asserts that because the subsequent physical line up resulted solely from his unlawfully obtained confession, the identifications of him as the perpetrator should have been suppressed as fruit of the poisonous tree. We disagree.
Before a confession can be introduced into evidence, the State has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451; State v. Mitchell, 437 So.2d 264 (La.1983); State v. Brown, 522 So.2d 1110 (La.App. 1st Cir.1988), writ den. 548 So.2d 1222 (La.1989).
Where the free and voluntary nature of a confession is challenged on the ground that the defendant was intoxicated at the time of the confession, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying. State v. Meredith, 400 So.2d 580 (La.1981); State v. Latiolais, 563 So.2d 469 (La.App. 1st Cir. 1990). Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact, and the trial court's conclusions will not be disturbed unless unsupported by the evidence. State v. Rankin, 357 So.2d 803 (La.1978).
In the instant case, Detective Cade testified both at trial and at the motion hearing of March 13, 1991, that he advised defendant of his Miranda rights before any inculpatory statements were made by defendant. Defendant stated he understood those rights and signed the rights of arrestee form. Detective Cade was firm in his belief that defendant "knew exactly what he was saying, ... and had complete control of himself. He's the one that said he had a cocaine habit, that the only reasons he was doing this, he was working, that he had a wife at home, that he had to support his cocaine habit, and the only way he could do that was by committing armed robberies."
Defendant argues that Detective Cade's impressions of defendant's competency are inconsistent. Defendant refers to Cade's testimony where he stated that a formal statement was not taken because of defendant's cocaine use, yet the detective felt he was competent to waive his Miranda rights. However, a fair reading of Cade's testimony clearly indicates that Cade was referring to defendant's cocaine use at the time of the robberies and defendant's inability to recall specifics. Cade was not referring to any cocaine influence of defendant at the time he waived his rights. Thus, the trial court's conclusion that the waiver was *268 knowingly and voluntarily given is clearly supported by the evidence, and the subsequent confessions and identifications were admissable.
These assignments of error are without merit.

ASSIGNMENT OF ERROR 3:
Defendant asserts the trial court erred by denying his motion for post-judgment verdict of acquittal based on the fact that the State presented only uncorroborated eyewitness testimony so that the jury could not have excluded every reasonable hypothesis of innocence. We disagree.
Suffice it to say there is no statutory or jurisprudential rule that requires that eyewitness testimony be corroborated. The credibility of witnesses and the factual determination of guilt is for the trier of fact to determine. State v. Richardson, 425 So.2d 1228 (La.1983).
When assessing the sufficiency of the evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. Mussall, supra. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. Mussall, supra. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, supra.
Defendant was convicted of two (2) counts of first degree robbery and one (1) count of attempted first degree robbery.
First degree robbery is:
"... the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." La.R.S. 14:64.1
Attempt is defined as:
"Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose." La.R.S. 14:27(A).
At trial, Casandra Adams testified that defendant lifted his shirt and showed her the handle of a gun, demanded the money in the cash register and threatened to kill her. Adams gave defendant the money.
Virginia Johnson testified that after defendant demanded the money from the register, she saw a green object in his possession which she believed to be a weapon. She gave defendant the money.
Bridgett Miles testified that she observed a gun protruding from defendant's waistband and that defendant demanded "big" bills from the register. When defendant realized there were no "big" bills he left without the money.
Thus, under the above facts, any rational trier of fact could have found proof beyond a reasonable doubt that defendant robbed Adams and Johnson and attempted to rob Miles by use of force or intimidation while armed or leading his victims to believe he was armed with a dangerous weapon. The evidence is sufficient to support defendant's conviction and sentence.
*269 This assignment of error is without merit.

ASSIGNMENT OF ERROR 4:
Defendant asserts the State was improperly allowed, on the morning of trial, to sever and continue three of the seven counts against defendant. Defendant claims the State severed the three counts "merely because trial on all seven counts simultaneously would have undermined the State's theory of a common scheme or plan." In support of his argument, defendant cites State v. Jones, 396 So.2d 1272 (La.1981) which held that the state may not sever counts merely to defeat a defendant's right to a jury trial. This case is inapplicable because defendant's right to trial by jury was never infringed. In severing the counts, the prosecution stated:
"BY THE COURT:
What is the basis of the severance you request?
MS. METOYER:
The unavailability of the witnesses on the other three counts, Your Honor.
MR. SINHA:
One of the reasons they are not available is because this case has been for a long timecontinued for a long time and set back. Several witnessesone has left the state and I think on another count the witness is unavailable.
MS. METOYER:
We have spoken to the one that left the state. We just could not get that witness in for the trial today.
MR. TURISSINI:
Your Honor, we have no objection to it and we would request a continuance if that's the only problem, witness availability.
BY THE COURT:
If I have to try the case twiceit's not that I don't mind trying the case twice or three times if things have to be severed because of a legitimate reason, but if the defense is not pursuing this in terms of their asking for a continuance or asking for a severance, I should say, somehow I don't feel that I know I should do that. If the State indicates they're not going to pursue the other three counts and they're only going to proceed on four, then they have every right to do that. If you intend to try them again on three separate counts on another day and the defense wishes to have a trial on all seven, since you joined them originally, then I'd have to grant their request that you try them all together.
MR. SINHA:
Your Honor, the State can say it's not going to go forward on definitely one of those two counts, Count Five.
BY THE COURT:
Let it be dismissed at this time.
BY SINHA:
But it's not going to be nol prossed at this time.
BY THE COURT:
Because
MR. SINHA:
The same would be for Count Six. The only remaining Count, again speaking in good faith to the Court, that may be tried again will be Count One. The State is not entering a nolle prosequi as to Count Five or Six at this time, but for the Court's information and for the defense counsel's information that's where we stand.
BY THE COURT:
With that understanding I will deny the request for a continuance. I note an objection for the defense and I'll proceed at this time to trial in this case. I will order the attorneys not to obviously refer to the other three counts, in fairness to the defendant to protect his rights. We will be proceeding on Count Two, Count Three, Count Four and Count Seven. Is that correct?"
Two of the three counts were in fact dismissed. The state has never prosecuted the third. Defendant has made no showing of any prejudice to him as a result of the trial court granting the severance.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 5:
Defendant asserts the trial court erred in refusing to give a special jury charge concerning *270 the fallibility of eyewitness testimony. We disagree.
A requested special charge shall be given by the trial court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. C.Cr.P. Art. 807; State v. Jones, 474 So.2d 919 (La.1985); State v. Valenzuela, 590 So.2d 89 (La.App. 4th Cir.1991), writ den. 593 So.2d 380 (La. 1992), cert. den. Valenzuela v. Louisiana, ___ U.S. ___, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992).
In his charge to the jury, the trial court stated:
"You are the exclusive judges of the facts. You find from the evidence and/or lack of evidence what facts have been proven and have not been proven. For this purpose you determine the credibility of the witnesses, accordingly as you are impressed with the veracity. You may take into account their manner on the stand, the probability or improbability of their statements the interest or lack of interest they may have in this particular case, the prior inconsistent statement or statements of any particular witness, the prior criminal conviction record, if any of any particular witness and every other fact and circumstance surrounding the giving of their testimony which may aid you in weighing their statements. If you believe that any witness in this case has wilfully and deliberately testified falsely as to any material fact for the purpose of deceiving you, you will be justified if you so desire in disregarding the entire testimony of that particular witness as proving nothing and being unworthy of belief. You have the right to accept as true or to reject as false the testimony of any witness, accordingly as you are impressed with his or her veracity."
Defendant has produced no support in law or in fact for the proposition that eyewitness testimony is less credible than other testimony requiring a special charge. Since the law on the credibility of witnesses was included in the general charge, the trial court did not err in refusing to give the special jury charge.
This assignment of error is without merit.
For the reasons assigned above, defendant's conviction and sentence is affirmed.
AFFIRMED.