NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 08-112 consolidated with KA 08-113

STATE OF LOUISIANA

VERSUS

B. J. B.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 44658
HONORABLE J. BYRON HEBERT, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Michael Harson
District Attorney
Laurie A. Hulin
Assistant District Attorney
15th Judicial District Court
P.O. Box 3306
Lafayette, LA 70502-3306
(337) 232-5170
Counsel for Plaintiff:
State of Louisiana

**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant:**
**B. J. B.**

**SAUNDERS, Judge.**

This is a case wherein Defendant voluntarily came to police and confessed to criminal activity. Defendant sought to have that confession suppressed via motion on the basis that the State failed to prove that his statement was freely and knowingly made, and that he was not still under the influence of the drugs at the time he confessed.

The district court denied Defendant's motion. Defendant and the State reached a plea agreement with Defendant reserving his right to appeal the denial of his motion to suppress. Defendant has exercised his reserved right. We affirm his conviction.

## FACTS AND PROCEDURAL HISTORY:

On November 15, 2005, the Vermilion Parish Grand Jury, under Vermilion Parish docket number 2005-44658 charged Defendant, B.J.B., with five counts of aggravated rape upon a juvenile whose birth date is July 4, 1980.[1]  The bill of indictment alleged that the offenses occurred from November 1, 1992, through January 31, 1993.  Defendant pled not guilty at his December 8, 2005, arraignment.

On May 15, 2007, Defendant filed with the district court a motion to suppress his confession wherein he admitted to raping both juveniles on the basis that he had been confused about his ability to have, and the necessity of having, an attorney present during questioning. As a result, the district court conducted a suppression hearing on September 27, 2007. After considering the evidence presented at the hearing, the district court denied Defendant's motion to suppress.

On or about October 16, 2007, pursuant to a plea agreement with the State, Defendant pled guilty to one count of forcible rape, in violation of La.R.S. 14:42.1.

---

[1]In accordance with La.R.S. 46:1844(W), Defendant's initials are being used in order to protect the identity of his daughter who is the victim in the instant case.

In accordance with *State v. Crosby*, 338 So.2d 584 (La.1976), Defendant reserved the right to contest the district court's denial of his motion to suppress on appeal. As part of the plea agreement, the State agreed not to file a habitual offender bill against him.

On the same date, the trial court sentenced Defendant in accordance with his plea agreement to twenty-five years at hard labor without benefit of probation, parole, or suspension of sentence. The sentencing court ordered the penalty to run consecutively to those imposed in Vermilion Parish docket number 2005-44659 and those imposed in St. Mary Parish docket number 2004-164063.[2] The district court ordered that Defendant was to be given credit for time served since his date of arrest in either the instant case or in Vermilion Parish docket number 2005-44659.

Defendant now appeals, assigning error to the district court's denial of his motion to suppress. We affirm Defendant's conviction.

**DISCUSSION OF THE MERITS:**

Defendant argues that the district court erred in denying his motion to suppress his January 29, 2004, statement made to Franklin Police Officers as the State failed to meet its burden at the suppression hearing to prove that his statement was freely and knowingly made, and that he was not still under the influence of the drugs at the time he confessed.

Defendant claims that the free and voluntary nature of his confession is questionable because he was under the influence of illicit drugs and medication at the time he gave his statement. The evidence that Defendant cites to aver that his lucidity should have been in question is: (1) he told the officers he was under the influence of medication, (2) he gave the officers a bag containing his medication, (3) his

_____

[2]Defendant, under KA08-113, has also appealed Vermilion Parish docket number 2005-44659. The cases were consolidated for briefing purposes only.

2

account of the offenses appeared disjointed and confused, and (4) he could not remember dates, ages, or birthdays at the time of the interrogation.

Defendant also argues that his confession should be suppressed because he was confused about his ability to have an attorney and the necessity for one at the time of his confession. Defendant contended that he should have been provided with a lawyer, and the statements should be suppressed because he was not given legal counsel at that time.

This court has determined that the proper standard of review for examining mixed questions of fact and law on a motion to suppress is abuse of discretion:

> When a trial court rules on a defendant's motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion. *State v. Burkhalter*, 428 So.2d 449 (La.1983), and *State v. Gaspard*, 96-1279 (La.App. 3 Cir. 2/11/98); 709 So.2d 213[, *writ denied*, 98-582 (La. 7/2/98), 724 So.2d 202].

*State v. Bargeman*, 98-617, p. 5 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, 967, *writ denied*, 99-33 (La. 5/28/99), 743 So.2d 658.

The district court conducted a hearing on Defendant's motion to suppress evidence on September 27, 2007. Captain Jim Broussard with the Franklin Police Department testified as the State's only witness. A summary of Captain Broussard's direct examination follows:

- Lieutenant Weinberger had received a complaint from Defendant's wife and daughter concerning allegations that Defendant had been sexually assaulting their daughter since she was twelve years old.

- Later the same day, Defendant's friend, André Dugas, brought him to the Franklin Police Station.

3

- The Franklin Police had not been expecting Defendant and had no knowledge that he would be there as he came of his own volition.

- When Defendant arrived, Captain Broussard met with he and Mr. Dugas for ten to fifteen minutes.

- During the meeting, Defendant told Captain Broussard that he wanted to tell what had happened between he and his daughter.

- Mr. Dugas was asked to leave the room as the officers set up a video recorder and retrieved a copy of their rights form so that Defendant could be interviewed.

- Lieutenant Carla Bourgeois joined Captain Broussard and they began the interview.

- Defendant signed the waiver of rights attached to the rights form after the officers read the form aloud.

- After Defendant waived his rights, Defendant was asked whether he preferred to be asked questions or to tell them what he wanted without questions.

- Defendant did not display signs that he was intoxicated.

- Defendant was upset about what had taken place, but he seemed okay as he was coherent both prior to and during the recorded interview.

- Defendant had not been incarcerated on these charges at any time before he went to the police station that evening, and he never indicated during the interview that he wished to have an attorney present.

- No one made promises to Defendant in exchange for the statement, and no one threatened or forced Defendant into giving the statement.

- Defendant stated that he went to the police station to confess because the offenses had been bothering him for a long time and because he wanted it to all come to an end.

4

- At one point, Defendant asked Lieutenant Bourgeois whether he needed an attorney.

- Defendant was told that it was his choice.

- Defendant said that he did not need an attorney as he wanted to talk to the officers.

- Defendant clearly admitted to raping both juveniles.

The State then introduced a transcript of the interview into evidence. The State then played a portion of the video recording of Defendant's statement for the district court and introduced into evidence an audio tape of the interview with him.

On cross-examination, Captain Broussard clarified that, although Defendant stated that he was taking medication, he did not think that Defendant's medication had impaired his judgment. Captain Broussard further stated that Defendant's speech was not greatly impaired and his comprehension seemed okay. Finally, Captain Broussard stated that it was possible they had drug-tested Defendant, but there was nothing in the file to indicate that such a test had been performed in Defendant's case.

Defendant testified on his own behalf for the limited purposes of the admissibility of the confession. A summary of his direct examination follows:

- Defendant hardly remembered the statement he gave to Captain Broussard because he was very much under the influence.

- The officers were aware of his intoxication.

- He and Mr. Dugas had been smoking marijuana and taking Xanax since around 6:00pm that day.

- Mr. Dugas had been attempting to talk Defendant into going to the police station by telling him that the police were going to come for him and he did not want his children to see that.

- Mr. Dugas finally convinced him to go to the police station around 10:00 p.m.

5

- He did not remember how many Xanax he had taken, but he had just gotten a new prescription for ninety pills and had fifteen left.

- He did not remember much about that evening, only going to the police station.

- He knew both Captain Broussard and Lieutenant Bourgeois prior to giving them the January 29, 2004, statement.

- He did not remember signing the waiver of rights form, but the signature appeared to be his.

- He would have meant the Xanax when he said that he was under the influence of medication, but he would not have admitted to the marijuana use because he still had some at the house and did not want to get his wife into trouble.

On cross-examination, Defendant revealed that he remembered some of what had transpired at the police station, such as who was present, conversations with some of those people, and taking a smoke break. Defendant admitted that his body was functioning at the time of the interview, but he denied that his mind was functioning. Defendant then conceded that he did not request legal counsel while he was at the police station.

The State then introduced Defendant's advice of rights and waiver of rights form. The form shows that on January 29, 2004, at approximately 11:04 p.m., Defendant, age thirty-nine, indicated that he understood his rights and that he waived those rights. The form reads as follows:

> I have been read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

The transcript of Defendant's interview at the Franklin Police Station shows that Defendant's confession began with Captain Broussard giving the date, time, and introducing both himself and Lieutenant Bourgeios. He then gave Defendant's name

6

and asked him to provide his middle name and age. After Defendant complied, Captain Broussard next asked him if he was "under the influence of any alcohol or . . ." Defendant interrupted him to say, "huh, huh – just my medication."

Captain Broussard then advised Defendant of his rights to an attorney during questioning, to have one appointed if he could not afford one, and his right to stop the interview and request a lawyer. Defendant twice indicated that he understood those rights.

Following is the initial exchange concerning whether Defendant intended to waive his right to counsel: (CJB is Captain Broussard; BB is Defendant; and CB is Lieutenant Bourgeois.)

CJB: are you willing to make a statement and answer questions?

BB: yes sir

CJB: okay – do you want a – I do not want a lawyer at this time – is that correct? You don't want one right now

BB: what ya'll think – I mean

CJB: well, its [sic] not for us

BB: I don't – I don't really know Jimmy, I mean

CJB: it's the object – I mean – to do the right thing

BB: right

CJB: but I can't influence you into making the decisions in that part, but in order [f]or us to get all this we have to go through all this – this rights form – so [d]o you need a lawyer at this time – right now – what your answer is?

BB: I don't think so, huh?

CB: are you asking us a question?

BB: I don't really know – Carla – I don't know what to do

CB: what do you want to do?

7

CJB: right now though [Defendant], in order for us to go through all this we have – for us to hear your whole side of the story we have to do all this the right way [–] now – the question is do you need a lawyer at this time to talk to us [–] okay?

BB: no, I'll talk to ya'11

CJB: okay, do you understand and do you know what your [sic] doing?

CJB: yes, is that correct – your [sic] shaking your head, yeah.

BB: yes, sir

CJB: okay, no promises or threats have made to me and no pressure or coercion of any kind has been used against me? Has anybody pressured or coerced you to come over here[?]

BB: no

CJB: alright – Do you feel comfortable talking to me and Carla?

BB: yes, I do

CJB: okay [–] alright – (inaudible) – all you do is sign your name and I read you rights [a]nd the next line is that your [sic] willing to talk to us and all that. – okay – (inaudible) – okay, now all day today Bob, you've been feeling bad and the condition that you are right?

BB: I've been feeling bad for a long time, Jimmy

CJB: okay, now the biggest thing [–] you know [–] do you want to tell us your story or do [y]ou want us to ask questions – you want to tell us right off the bat first what – Why are you here?

BB: because I [–] I did something wrong

CJB: okay, what you – what you did wrong?

BB: I did something wrong with my daughter

Defendant was not placed under arrest until the end of the interview. After considering the evidence and arguments presented, the district court denied Defendant's motion to suppress. The following is a transcript of the district court's statements:

THE COURT: Article 703 of the Code of Criminal Procedure sets the ground for motion to suppress, and basically what it says is that

8

evidence can be suppressed from a trial on the ground that it's been unconstitutionally obtained. Any constitutional ground to suppress a confession may be considered.

I think the constitutional issues that arise fit basically broadly into two categories, and one is advice rights under Miranda, and the other one is the absence of coercion of any kind. I think that the issues that counsel has pointed out for the defense, the two main issues, capacity and valid waiver of an attorney, is what I need to address.

I will agree with the State that [Defendant]'s memory of the events of that night or the day that he gave his confession are convenient, that he remembers those things that would help him in this hearing, and he doesn't remember those things that hurt him in the hearing. I'm not going to recite them again, but, again, he remembers taking -- overdosing on his pills and being coerced to go to the police station and who was in the room, when, at what time, and smoking the cigarette and whatnot, but he doesn't remember anything else.

Addressing those two issues of capacity and medication, on the mental capacity, I think that we need to be careful not to exceed the requirements of Miranda when a defendant is about to give a confession with regard to the voluntariness. The obligation of the law enforcement officer is to apprize the defendant of his rights under Miranda and to ensure that he understands them. Certainly mental capacity comes into it, and if there is an obvious mental impairment, then I think that it would bear some delving into by the law enforcement officer.

I find it strange that, in answer to the question from Captain Broussard --

M. HULIN: Yes, sir.

THE COURT: -- are you under the influence of alcohol or -- and he was interrupted. And the answer is: Huh-uh or no, only my medication. I think that the question was clearly, are you under the influence of any alcohol, drug, or medication that would impair your ability. I mean, he didn't get to say all of that. I don't know if he would have said all of that.

But it seems to be very odd that, if the defendant had taken as much Xanax that night and had smoked as much marijuana that night as he claims to have had, then he would have said, I've taken a lot of prescription medication, even if he didn't want to admit to the marijuana. If he had a prescription for Xanax -- which hasn't been proved here. I haven't seen any prescription. I haven't seen any medical report. If he took that much Xanax, I think that he would have said that he was under influence of a lot of Xanax.

Besides that, I looked at the video, even though we couldn't hear it. I listened to the audio, and I don't detect any signs of impairment.

9

The officer testified that he didn't detect any signs of impairment, which would have prompted him or required him, perhaps, to go further into the situation.

So, in terms of being mentally impaired as a result of this overdose of Xanax or -- well, I will call it -- it's an overdose, is what it is. It's beyond what he was supposed to take. I don't see that. The defendant himself testified as to the effect it would have on him, slowing down his speech and his physical movements, and there was none of that.

The education, ninth-grade education, does not render a person incapable of understanding his Miranda Rights. I think that, by the time he's in the ninth grade, completes the ninth grade, he can read and write. There is nothing to indicate that he was uneducated. If he had answered, I never went to school or I didn't make it past, you know, the early grades, then perhaps it would have, again, required some more questioning. But when he says, I've got a ninth-grade education, I think that that, under our school system, should be fine in terms of -- if the issue was, can you read and write, then I think that that answered that.

With regard to the attorney, yes, he did -- I do agree with defense counsel that the defendant exhibited ambivalence about whether or not to get an attorney, and he was seeking advice from the police officers as to whether or not he should have a lawyer at that time. I think that Captain Broussard correctly avoided any advice. It is not his place to advise one way or the other that he should have an attorney. He repeatedly told him: You have a right to an attorney right now before we go any further. We need to do this right, and part of doing it right is that, if you want an attorney, we don't ask -- you don't answer any more questions, we stop right now, and it's up to you. It's not our decision.

And the defendant was obviously at that time trying to get the officers to commit one way or the other, to tell him he either did or did not need an attorney, and Captain Broussard just wouldn't do it, and I think that's correct. I don't think that law enforcement should imply in any to which way the defendant should go.

The Miranda requirement is that he be advised of his right to an attorney immediately and that questioning would immediately stop if he expressed any desire for an attorney, which Captain Broussard did, he did it well, he did it repeatedly. And at the end he would not ask another question until the defendant committed categorically, no, I don't want an attorney. No, I will answer your questions. So I don't have any problem there. I will deny the motion to suppress.

The State bears the burden of proving the admissibility of a purported confession or statement by the defendant. La.Code Crim.P. art. 703(D). "Before what purposes [purports] to be a confession can be introduced in evidence, it must be

affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." La.R.S. 15:451 (footnote omitted).

Defendant first contends that the timing of his *Miranda* warning and waiver of rights corrupted the free and voluntary nature of his statement. Defendant contends that the Franklin Police officers created a problem with the free and voluntary nature of his confession by interrogating him about the alleged crimes for ten to fifteen minutes prior to advising him that he was entitled to presence of counsel. Defendant alleges that the Franklin Police had been notified earlier in the day that Defendant had committed a sexual offense against his daughter when his daughter gave a statement to the officers at the Franklin Police Station. Defendant urges, therefore, that the police officers interviewing Defendant should have advised him of his right to counsel at the beginning.

Defendant neither included this timing issue in his motion to suppress nor verbally argued the assertion at the suppression hearing. Because Defendant failed to first present this issue to the trial court, it is beyond this court's scope of review. Uniform Rules—Courts of Appeal, Rule 1-3.

Defendant, both by verbal affirmance and by signing the waiver form, indicated that his statement was free and voluntary. Captain Broussard attested that Defendant voluntarily appeared at the police station without either an invitation by, or prior knowledge of, the Franklin Police. Defendant agreed that the signature on the waiver appeared to be consistent with his handwriting, and Captain Broussard also confirmed that Defendant was, indeed, the person who signed the waiver of rights form. Therefore, the State made an initial showing that Defendant's confession was both free and voluntary.

11

Defendant further claims that the free and voluntary nature of his confession is questionable because he was under the influence of illicit drugs and medication at the time he gave his statement.

The supreme court has previously discussed the test for determining whether a defendant's intoxication was sufficient to justify suppression of his confession:

> Where the free and voluntary nature of a confession is challenged on the ground that the accused was intoxicated at the time of interrogation, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence.

*State v. Robinson*, 384 So.2d 332, 335 (La.1980) (citations omitted).

This court has previously reviewed cases where the defendant argued his intoxication merited suppression of his confession:

> A review of reported decisions reveals that the courts have admitted confessions in situations where the defendant has admitted to using drugs shortly before the confession. For example, in *State v. Williams*, 602 So.2d 318 (La.App. 1 Cir.), *writ denied*, 605 So.2d 1125 (La.1992), the defendant had a blood alcohol level of 0.169, and a drug screen test revealed the presence of cocaine metabolites and cannabinoids. However, there was no testimony given as to the amount of drugs the defendant had ingested, or when he had ingested the drugs. The court ruled that simply because a defendant had used drugs or alcohol, or both, did not per se render his confession invalid. These factors are simply one of the circumstances the court examines when assessing the voluntariness of a confession. In *Williams*, the court noted that the defendant was able to answer the questions with reasonably direct responses, expressed his thoughts in an appropriate manner, and he was able to correct written mistakes. Therefore, the court of appeal reversed the trial court's ruling suppressing the confession.
>
> In *State v. Davis*, 92-1623 (La. 5/23/94); 637 So.2d 1012, *cert. denied*, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994), the Louisiana Supreme Court upheld a trial court's decision that a defendant's confession was free and voluntary even though the defendant had smoked three or four rocks of crack cocaine twenty-four hours before his confession and he had consumed three or four beers

12

earlier in the day of his confession. The court noted that the defendant appeared coherent, and he was able to explicitly recount the details of the crime.

In *State v. Green*, 613 So.2d 263 (La.App. 4 Cir.1992), the defendant sought to suppress his confession claiming he was under the influence of crack cocaine at the time of his confession. The detective who interrogated the defendant testified the defendant knew exactly what he was saying and had complete control of himself. The court refused to suppress the confession, finding the defendant freely and voluntarily waived his *Miranda* rights, and that he was not so intoxicated he was unconscious of the consequences of what he was saying.

In *State v. Rose*, 606 So.2d 845 (La.App. 2 Cir.1992), the defendant claimed the alcohol and cocaine she had consumed rendered her incapable of giving a free and voluntary statement. The detective interrogating the defendant noticed track marks on her arms and smelled alcohol on her breath, but felt her general demeanor and responses to his questions indicated an ability to comprehend the situation and to knowingly and intelligently waive the right to remain silent. Therefore, the defendant's motion to suppress was denied.

In the present case, two experts gave conflicting opinions about the Defendant's condition at the time of his confession. Also, all of the police officers who had contact with the Defendant on the night of his confession testified at the pretrial hearing that the Defendant did not appear intoxicated from cocaine. The test set forth in *Robinson*, 384 So.2d 332, is not simply did the defendant use alcohol or drugs, but did the use of these substances negate the defendant's comprehension and render him unconscious of the consequences of what he is saying.

Although the Defendant presented evidence concerning his intoxication at the time of his confession, the State presented sufficient evidence to prove that the Defendant freely and voluntarily waived his right to remain silent and to consult with an attorney before he gave his confession. The evidence presented did not establish that the Defendant was intoxicated to a degree that it negated his comprehension and rendered him unconscious of the consequences of what he said.

*State v. Guillory*, 97-179, pp. 16-18 (La.App. 3 Cir. 3/11/98), 715 So.2d 400, 411,

*writ denied*, 98-955 (La. 10/9/98), 726 So.2d 17.

In the instant case, Captain Broussard's testimony confirmed that Defendant

had brought a small bag of medication to the police station with him. However,

Captain Broussard denied that Defendant exhibited any signs of intoxication or

incoherence. On cross-examination, Captain Broussard denied thinking that

13

Defendant was intoxicated due to his medication. Captain Broussard conceded that it was possible that they had drug-tested Defendant, but there was nothing in his file showing that such a test had occurred.

Based on its observation of the evidence presented at the suppression hearing, the district court noted that Defendant denied being under the influence of any intoxicating substance, found that the video of his confession revealed that Defendant's physical demeanor was not consistent with intoxication, found that the audio recording of Defendant's statement was not consistent with intoxication, and found that Defendant's faulty memory conveniently recalled only those details that would aid him at the suppression hearing and none of the events detrimental to his motion to suppress. The district court also pointed out that Captain Broussard had not noticed any indication of impairment. Therefore, the district court based on its own observations of the physical evidence and the testimony of Captain Broussard, found Defendant's assertion that he was intoxicated unbelievable.

We have reviewed both the audio and video recordings. Defendant's demeanor and language seemed normal and were not consistent with someone so inebriated as to negate comprehension and to render someone unconscious of the consequences of his decisions.[3] After listening to the audio tape, the exchange concerning whether Defendant wanted an attorney present demonstrated that Defendant was cognizant of the repercussions of refusing assistance of counsel. He did not seem confused or befuddled. He simply wanted the officers' opinions on whether he should request a lawyer. Given that the trial court's findings were supported by the physical evidence and Captain Broussard's testimony regarding Defendant's appearance of sobriety, they did not constitute a palpable or obvious abuse of discretion.

_____

[3]We note that the only seeming physical or audible characteristic out of the ordinary was a repeated sniffing as if Defendant had a head cold.

14

**CONCLUSION:**

We affirm Defendant's conviction.

**AFFIRMED.**

15

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.